**William K. MASUDA, Plaintiff,**

v.

**THOMAS RICHARDS & CO., Defendant.**

**No. CV 89–6866 MRP.**

United States District Court, C.D. California.

March 21, 1991.

As Amended June 25, 1991.

**1458**

Michael A. Weiss, Los Angeles, Cal., for plaintiff.

Norman Edell, Beverly Hills, Cal., for defendant.

### OPINION

PFAELZER, District Judge.

William K. Masuda filed this action against Thomas Richards & Company ("TRC"), alleging *inter alia* violations of the Fair Debt Collection Practices Act ("FDCPA" or the "Act"), 15 U.S.C. §§ 1692–1692*o* (1988).[1] Plaintiff Masuda, a debtor, contends that TRC, a debt collection agency, transgressed numerous provi-

---

1. Federal jurisdiction is predicated on 15 U.S.C. § 1692k(d). Plaintiff's complaint includes pen-

sions of the federal debtor protection statute in telephone calls and dunning letters to him. Plaintiff now moves for summary judgment as to the alleged violations.

The most interesting question presented by this case is whether the FDCPA proscribes a debt collector from sending a debtor a form letter signed by an independent attorney when the attorney has no knowledge of and has not conferred with the debt collector concerning the particular debt to which the letter refers. Masuda argues that this constitutes a false and misleading representation and an unfair collection practice proscribed by the Act. 15 U.S.C. §§ 1692e(3), 1692f (1988). The Court agrees and grants summary judgment as to this alleged violation.

Masuda maintains, in addition, that the defendant TRC (1) attempted to collect debts without giving him the notice required by the Act in violation of 15 U.S.C. § 1692g(a) (1988); (2) communicated with him when the defendant knew he was represented by counsel and also communicated with a third party about his alleged debts in violation of 15 U.S.C. § 1692c (1988); (3) harassed and abused him in letters and phone calls in violation of 15 U.S.C. § 1692d (1988); (4) used language, other than a return address, on envelopes sent to him in violation of 15 U.S.C. § 1692f(8) (1988); and (5) made various false and misleading representations in correspondence to him in violation of 15 U.S.C. § 1692e (1988). As to these alleged violations of the federal debtor protection statute, the Court grants plaintiff's motion in part and denies plaintiff's motion in part.

## FACTS

While hospitalized at Cedars Sinai Medical Center in early 1989, Masuda incurred debts to the Glenview Pathology Medical Group and to the Advanced Imaging Medical Group.[2] When Masuda neglected to pay these debts, the creditors assigned them to debt collection agency TRC to secure payment.[3]

In attempting to effect collection, TRC set in motion its standard response to delinquent debtors. The debt collector sent a series of form letters, known as dunning or "demand" letters, to Masuda in connection with each of the alleged debts.[4] In addition, TRC employees telephoned Masuda to demand payment. Initial phone calls and letters exhorted Masuda to meet his financial obligations. Later communications threatened legal action if Masuda failed to pay.

Most of the dunning letters sent to Masuda were signed by TRC employees. Some of the letters, however, were signed by attorney Kenneth N. Wolfe on his law firm letterhead.[5] Like the other letters, these attorney letters were form letters sent regularly by TRC to delinquent debtors. In the letters, attorney Wolfe stated that his office "represent[ed]" TRC and that TRC had asked him to consider filing a lawsuit against Masuda.[6] Plaintiff's Ex-

dent state claims for intentional infliction of emotional distress, and invasion of privacy, and violations of the California debtor protection statute, Cal.Civ.Code § 1788. The pendent claims are not presently at issue.

**2.** Neither party has indicated how many debts were, in fact, incurred by Masuda and subsequently assigned to TRC for collection. The evidence submitted by plaintiff in support of his motion suggests that he owed seven debts totalling $2,219.00 to the Advanced Imaging Medical Group and one debt in the amount of $93.67 to the Glenview Pathology Medical Group.

**3.** The parties do not dispute that defendant TRC is a debt collector subject to the provisions of the FDCPA. The Act defines a debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the col-

lection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

**4.** The defendant appears to have mailed two to seven form letters with respect to each of the alleged debts.

**5.** Plaintiff does not indicate whether he received a copy of the letter from Wolfe with respect to each of the debts assigned to TRC.

**6.** The Wolfe letter provided in relevant part:
This office represents Thomas Richards & Co., to which your account has been assigned. I have been asked to consider filing a lawsuit against you, for the balance due, together with interest, court costs, and if legally appropriate, attorney fees, which if awarded will be added to your indebtedness of [ ].

hibit 15. Wolfe advised Masuda to pay his debts in order to avoid a lawsuit which would be both costly and inconvenient. *Id.* The letters did not supply Wolfe's own office telephone number or address, but rather counseled Masuda to contact TRC to arrange payment. *Id.*

In response to TRC's collection efforts, Masuda hired attorney Michael Weiss to represent him. Weiss wrote to TRC on July 31, 1989, advising the debt collector to direct "all further communication concerning your collection efforts concerning the hospital bills ... to me." Plaintiff's Exhibit 20. Nevertheless, TRC sent additional dunning notices to Masuda in September–November 1989. *See* Plaintiff's Exhibits 23–29.

## DISCUSSION

### Attorney Letters

■ Masuda contends that TRC violated the FDCPA by sending him letters which purported falsely to have been sent personally by attorney Wolfe. Under 15 U.S.C. § 1692e, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." The FDCPA specifically proscribes the "false representation or implication that any individual is an attorney or that any communication is from an attorney." 15 U.S.C. § 1692e(3).

The deposition testimony of attorney Wolfe reveals that he, along with TRC employees, drafted the attorney form letter which the debt collector sent to alleged debtors. Deposition of Kenneth Norman Wolfe ("Wolfe Deposition") at 15. But TRC—without Wolfe's participation—determined when to generate and send personal-

---

Before a suit is initiated, this letter is designed to afford a *final opportunity* to eliminate the need for such litigation. My client and I are as interested as you are, in avoiding an unnecessary lawsuit, and the resulting expense.

... This office does not engage in a long series of letters. This will be your one and only letter from the undersigned.

You are therefore urged to contact Thomas Richards & Company ... upon receipt of this letter, so that the lawsuit, and its attendant expense and inconvenience can be avoided. Plaintiff's Exhibit 15.

---

ized copies of the letter to individual debtors such as Masuda. *Id.* at 17–18, 36. Wolfe testified that, at the time TRC sent copies of the attorney form letter to Masuda, he had not reviewed Masuda's file and was not "involved" in Masuda's case.[7] *Id.* at 14–15, 17–18, 36. TRC printed the attorney letters which were sent to Masuda, filling in Masuda's name and information relating to Masuda's respective debts; and TRC mailed the letters. *Id.* at 17, 36. Wolfe simply signed them at the direction of TRC. *Id.* at 10–11.

■ In determining whether TRC's procedure with respect to the attorney form letter constitutes a deceptive and misleading practice under the FDCPA, the Court must assess the impact that the letter would have on the least sophisticated debtor. *See Swanson v. Southern Oregon Credit Service, Inc.*, 869 F.2d 1222, 1227 (9th Cir.1988) (applying the least sophisticated debtor standard to claim that debt collector made a "threat to take any action that cannot legally be taken" in violation of 15 U.S.C. § 1692e(5)); *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1172–1178 (11th Cir.1985) (applying the least sophisticated debtor standard to claim that debt collector used "false representation or deceptive means to collect or attempt to collect any debt" in violation of 15 U.S.C. § 1692e(10)). " 'The FDCPA's purpose of protecting [consumers] ... is best served by a definition of "deceive" that looks to the tendency of language to mislead the *least sophisticated* recipients of a debt collector's letters and telephone calls....' " *Jeter*, 760 F.2d at 1175 (citation omitted) (emphasis added).

Applying this standard, the Court concludes that TRC's debt collection procedure violates § 1692e(3), and grants summary judgment as to this alleged violation.[8] Al-

---

7. Defendant TRC asserts that Wolfe reviewed Masuda's file before the letter was sent. *Defendant's Memorandum of Points and Authorities in Opposition to Plaintiff's Motion* at 7. There is, however, no support in the record for this contention. On the contrary, Wolfe testified that he reviewed the file only *after* the debt collection company had mailed the letter. Wolfe Deposition at 17–18.

8. While no reported cases have discussed the applicability of the least sophisticated debtor standard to claims under § 1692e(3), *Swanson* and *Jeter* clearly support such an application. Both cases explain that deceptiveness must be

though attorney Wolfe may have drafted a substantial portion of the form letter, the letter falsely suggests to the least sophisticated debtor that an attorney has been retained to collect his or her *particular* debt. Thus, the letter implies to the recipient that TRC considers the debt to be more serious than TRC, in fact, considers it to be. *Cf. Britton v. Weiss,* No. 89–CV–143, 1989 WL 148663 (N.D.N.Y. as amended Dec. 12, 1989) (LEXIS, Genfed library, Dist file) (representation that dunning letter is from independent outside counsel when letter is, in fact, from creditor's in-house counsel may mislead consumer into believing that communication is more urgent and significant than consumer might otherwise believe). The representation that independent counsel has been hired may unjustifiably frighten the unsophisticated debtor into paying a debt that he or she does not owe. The FDCPA must be construed to proscribe this means of collection.

Debt collectors may complain that, given the large number of debts they attempt to collect, it is impractical to consult an attorney before sending the attorney form letter to every delinquent debtor. Moreover, these collectors may argue that the only purpose of such a consultation would be to direct the attorney to mail the same dunning letter. While these arguments are somewhat persuasive, they do not excuse the misrepresentation to the consumer that an attorney has reviewed his or her file and is about to file a lawsuit. Under the FDCPA, before an attorney signs a dunning letter, the attorney must review the debtor's file and have some knowledge about the alleged debt.[9]

Masuda contends that TRC's use of the attorney form letter also constitutes an unfair or unconscionable collection practice prohibited by § 808 of the FDCPA. Under 15 U.S.C. § 1692f, "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."[10]

In evaluating whether TRC's use of the attorney form letter is "unfair or unconscionable," the Court must again examine the letter from the perspective of the least sophisticated consumer. *See Kimber v. Federal Financial Corp.,* 668 F.Supp. 1480, 1487 (M.D.Ala.1987).

In *Kimber,* the defendant debt collector filed suit to collect a debt despite the fact that the state statute of limitations appeared to bar the suit. The debt collector did not examine whether the limitations period had been tolled before filing its action. The court held this conduct by the debt collector to be unfair and unconscionable in violation of § 1692f. *Kimber,* 668 F.Supp. at 1487.

Because few unsophisticated consumers would be aware that a statute of limitations could be used to defend against lawsuits based on stale debts, such consumers would unwittingly acquiesce to such lawsuits. And, even if the consumer realizes that she can use time as a defense, she will more than likely still give in rather than fight the lawsuit because she must still expend energy and resources and subject herself to the em-

measured through the eyes of the least sophisticated consumer. In any case, the Court would conclude that TRC's conduct violated § 1692e(3) even if the Court were to apply a "reasonable consumer standard."

**9.** While Masuda has not named attorney Wolfe as a defendant in this case, the FDCPA applies to attorneys who collect debts. The Act originally exempted attorneys who collected debts on behalf of clients. Fair Debt Collection Practice Act, Pub.L. No. 95–109, 91 Stat. 874 (1977). But Congress repealed the attorney exemption in 1986. Act of July 9, 1986, Pub.L. 99–361, 100 Stat. 768 (1986). *See generally Crossley v. Lieberman,* 868 F.2d 566 (3rd Cir.1989).

**10.** Section 1692f sets forth a series of acts which constitute unfair practices. But the statute ex-

plicitly provides that the specific provisions do not limit the application of the general proscription. In enacting § 808 of the FDCPA, Congress employed general language to "enable the courts, where appropriate, to proscribe ... improper conduct which is not specifically addressed." S.Rep. No. 95–832, 95th Cong., 1st Sess. 4, *reprinted in* 1977 U.S.Code Cong. & Admin.News 1695, 1698. The specific provisions of § 1692f forbid debt collectors from collecting an amount greater than the amount owed, causing charges for communications to be billed to the consumer, taking or threatening to take nonjudicial action to repossess property, communicating with a consumer about a debt by postcard, using language besides a return address on envelopes sent to a debtor, and taking certain actions in connection with a debtor's postdated check.

barrassment of going into court to present the defense; this is particularly true in light of the costs of attorneys today.

*Id.* Similarly, a letter which implies that an attorney has become involved in the collection of an alleged debt may very well convince the unsophisticated debtor to pay a debt that the debtor would otherwise contest. "The Act is designed to protect consumers who have been victimized by unscrupulous debt collectors, regardless of whether a valid debt actually exists." *Baker v. G.C. Services Corp.,* 677 F.2d 775, 777 (9th Cir.1982). Accordingly, this Court finds that TRC's action is unfair and unconscionable in violation of § 1692f and grants summary judgment as to this alleged violation.

*Written Notice to Consumer*

Masuda contends that TRC failed to comply with the written notice requirements of the validation of debts provision of the FDCPA, 15 U.S.C. § 1692g(a). Section 1692g(a) requires debt collectors to provide debtors with sufficient factual information about any alleged debt and to advise debtors of their right to contest the validity of any alleged debt.[11] Congress enacted this provision to "ensure that debt collectors gave consumers adequate information concerning their legal rights." *Swanson,* 869 F.2d at 1225.

Masuda first argues that defendant's initial form letters implied that he had less than thirty days to contest the validity of the alleged debts. Under § 1692g(a)(3) of

the FDCPA, a debt collector must send an alleged debtor written notice containing "a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, . . . the debt will be assumed to be valid by the debt collector."

While TRC supplied the basic language required by § 1692g(a)(3) in its initial letters to Masuda, the company simultaneously advised Masuda that his health insurer would deny coverage if Masuda did not respond within *one week* to requests to provide *TRC* with "assigned insurance forms." *See* Plaintiff's Exhibits 3, 23, 24. The letters stated in relevant part:

> The above referenced claim against you has been assigned to this office for collection. Unless you, within thirty (30) days from receipt of this letter, dispute the validity of this debt, or any portion thereof, this debt will be assumed to be valid.
>
> If this claim is insurable, you have until [one week from the date of the letter] by which to supply our office with an assigned insurance form. Your failure to comply with this request will leave this liability with you.

*Id.*

■ In evaluating whether the debt collector has complied with § 1692g, the "least sophisticated debtor" standard is applicable. *Swanson,* 869 F.2d at 1225; *Baker,* 677 F.2d at 778.

In *Swanson,* the defendant debt collector sent plaintiff debtor a notice stating in large bold-faced print that the debtor could avoid deleterious consequences only by

---

**11.** 15 U.S.C. § 1692g(a) states:

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after the receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

paying his debt within ten days. Beneath this notice, the collector informed the plaintiff, as required by the FDCPA, that he had thirty days to dispute the validity of the debt. This latter information was printed in small plain text. Analyzing the language from the perspective of the "least sophisticated debtor," the Court held that the debt collector's action violated § 1692g. *Swanson*, 869 F.2d at 1225–1226.

> The statute is not satisfied merely by inclusion of the required debt validation notice; the notice Congress required must be conveyed *effectively* to the debtor.... Furthermore, to be effective, the *notice must not be overshadowed or contradicted* by other messages or notices appearing in the initial communication from the collection agency.

*Id.* at 1225 (emphasis added); *see also Ost v. Collection Bureau, Inc.*, 493 F.Supp. 701, 703 (D.N.D.1980) (collection letter which, on the front side, requested payment of a debt within five days, and, on the back side, gave § 1692g notice "evade[d] the spirit of the notice statute, and [misled] the debtor into disregarding the notice").

■ In this case, TRC's allusion to a one-week deadline implies to the least sophisticated debtor that he or she does not have the statutorily-mandated thirty days to contest the validity of the debt. These statements impaired the effectiveness of the thirty-day notice, entitling Masuda to summary judgment as to this alleged violation.

Masuda next maintains that TRC failed to inform him in a timely manner that he had the right to request verification of any disputed debt. Section 1692g(a)(4) requires a debt collector, within five days after the initial communication with a consumer, to send the consumer a written statement that, "if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt" and mail it to the consumer.

■ The FDCPA states unambiguously that a debt collector must furnish a consumer with the notice required by the statute. *See Baker*, 677 F.2d at 777–778. Defendant maintains that it satisfied its statutory obligation by including information relating to verification in its initial communication to Masuda. TRC's assertion concerning the content of its initial communication is, however, simply wrong. TRC has produced no evidence indicating that it complied with this obligation. The company's initial dunning letters to Masuda did not discuss verification. *See* Plaintiff's Exhibits 3, 23, 24. The Court grants summary judgment to Masuda as to this alleged violation.

■ Masuda also argues that TRC failed to inform him that he had the right to request the names and addresses of his original creditors if different from his current creditors. Section 1692g(a)(5) requires a debt collector, within five days of its initial communication to a consumer, to notify the consumer that the collector will supply, upon the consumer's request, the name and address of an original creditor if different from a current creditor.

TRC's initial form letters to Masuda included the names and addresses of creditors. Plaintiff has not produced evidence that the names provided were different from the names of his original creditors. As the defendant appears to have furnished the names of the original creditors in compliance with § 1692g(a)(5), summary judgment must be denied as to this alleged violation.[12]

---

12. Masuda has also moved for summary judgment on the ground that attorney Wolfe's letters failed to comply with the notice requirements of § 1692g(a). Plaintiff contends that TRC should be held accountable for its attorney's failure to provide § 1692g notice to plaintiff because the company—and not the attorney—was responsible for the content of the letters and for the decision to mail them.

The Court denies summary judgment as to this alleged violation. Masuda's argument is predicated on the assumption that the attorney letters represent "initial communications" under § 1692g. But the attorney letters were mailed to Masuda only after other unsuccessful dunning letters were dispatched. The prior dunning letters—not the attorney letters—represent the "initial communications" which are covered by the FDCPA.

*Unauthorized Communications*

Masuda charges TRC with violating 15 U.S.C. § 1692c by (1) sending him dunning notices when the company knew he was represented by counsel and (2) communicating with a third party about his alleged debts.

■ Masuda contends that TRC improperly sent dunning notices to him in September—November 1989 although Masuda's attorney, Michael Weiss, had advised TRC on July 31, 1989 that Masuda was represented by counsel. As discussed above, attorney Weiss directed TRC to send "all further communication concerning [its] collection efforts concerning the hospital bills ... to [him]." Plaintiff's Exhibit 20.

Section 1692c(a) provides in relevant part:

Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt—

....

... (2) if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer....

Section 1692c(c) reads:

If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt....

Although TRC's conduct in September–November 1989 appears at first glance to violate § 1692c, Masuda's motion does not establish that TRC violated this provision. There is a genuine issue of material fact as to whether TRC knew that Weiss represented Masuda with respect to the particular debts to which the September–November 1989 letters refer. In addition, there is a genuine issue of material fact as to whether TRC had been notified to cease communication with respect to the debts mentioned in these letters. The September–November 1989 dunning notices appear to seek collection of debts which were assigned to TRC after July 31, 1989, the date on which Weiss wrote to TRC.[13] Despite the broad language of Weiss' letter, it would be unfair to charge TRC with the knowledge that Weiss represented Masuda with respect to debts assigned to TRC *after* the date of his letter.[14]

■ This conclusion is supported by the Federal Trade Commission's ("FTC") interpretation of § 1692c.

[T]he standard operating procedure for many debt collectors is to close the consumer's file once a debt is collected or efforts to collect it cease. Should a second debt from the same consumer be assigned to the debt collector, therefore, the collector might be unaware of the previous file on that debtor and would not know whether the consumer was represented by an attorney with respect to all future debts.... A debt collector who knows a consumer is represented by counsel with respect to a debt is not required to assume similar representation on other debts....

FTC Statements of General Policy or Interpretation[;] Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed.Reg. 50097, 50098, 50104 (1988).[15] The FTC recognized that requiring a debt collector to

---

**13.** In fact, some evidence in the record strongly suggests that, at the time the debts discussed in the September–November 1989 dunning notices were assigned to TRC, TRC had ceased collection efforts on all of Masuda's debts which were assigned to the company before July 31, 1989.

**14.** The fact that the debts assigned to TRC after July 31, 1989 were owed to the same creditors as the earlier debts does not require a contrary result.

**15.** Although the FDCPA expressly prohibits the FTC from issuing rules or regulations to supplement the statute, *Pressley v. Capital Credit & Collection Service*, 760 F.2d 922, 925 n. 2 (9th Cir.1985) (discussing 15 U.S.C. § 1692*l*(c), (d)), the FTC is the administrative agency charged

know when an alleged debtor is represented by counsel with respect to future debts would place an "unreasonable burden" on the debt collector. *Id.* at 50098. The Court denies summary judgment as to the alleged violations of § 1692c(a) and § 1692c(c).

Masuda next contends that TRC violated § 1692c(b) by communicating with his insurance company about the alleged debts without his consent.

15 U.S.C. § 1692c(b) provides in relevant part:

[W]ithout the prior consent of the consumer given directly to the debt collector, ... a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

As TRC appears to have contacted an agent of plaintiff's health insurer concerning the debts, the Court grants summary judgment as to this alleged violation.

*Harassment and Abuse*

Masuda argues that TRC violated § 1692d by sending letters and making phone calls to him which were harassing and abusive. 15 U.S.C. § 1692d provides that "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a

debt." [16] Congress adopted this general language to "enable the courts, where appropriate, to proscribe ... improper conduct which is not specifically addressed [in § 1692d(1)–(6) ]." S.Rep. No. 95–382, 95th Cong. 1st Sess. at 4, *reprinted in* 1977 U.S.Code Cong. & Admin.News at 1698.

Plaintiff contends first that the number of letters which TRC sent to him, forty-eight letters in eight months, was harassing. Second, Masuda claims that TRC violated § 1692d by making threatening telephone calls to him. Third, Masuda alleges that TRC "harassed" him by urging him to send TRC "assigned insurance forms" within one week of the collector's first letter to him.

In evaluating claimed violations of § 1692d, courts have adopted a consumer protective standard which is analogous to the least sophisticated debtor standard applied to other provisions of the FDCPA. *See Jeter*, 760 F.2d at 1179. "[C]laims under § 1692d should be viewed from the perspective of a consumer whose circumstances makes [sic] him relatively more susceptible to harassment, oppression, or abuse." *Id.*

▮ Applying this standard, the Court denies plaintiff's motion for summary judgment as to the alleged violations of § 1692d. Letters, so long as they comply with specific FDCPA requirements, represent the least intrusive means of communicating with debtors.[17] Even if all of the alleged forty-eight letters referred to the same debt, it would not be appropriate to

with enforcing the statute, and its interpretation should be given "'some weight.'" *Jordan v. Kent Recovery Services, Inc.*, 731 F.Supp. 652, 659 (D.Del.1990) (citation omitted).

**16.** Section 1692d reads as follows:

A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.

(2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.

(3) The publication of a list of consumers who allegedly refuse to pay debts, except to a

consumer reporting agency or to persons meeting the requirements of section 1681a(f) or 1681b(3) of this title.

(4) The advertisement for sale of any debt to coerce payment of the debt.

(5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

(6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

**17.** The FDCPA states that "causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number" constitutes harassment or abuse in violation of § 1692d. The statute

deem the mailing of six letters per month as "harassing." In enacting the FDCPA, Congress intended to create a balance "between the interests of consumers in freedom from harassment and the interests of ethical debt collectors in freedom from unnecessary restrictions." *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 26 (2nd Cir.1989). The statute should not foreclose the most innocuous means of collecting debts from delinquent debtors. Summary judgment is denied as to this allegation.

As to TRC's conduct in telephone conversations, Masuda has failed to present sufficient evidence of the factual circumstances surrounding actual phone conversations between TRC's employees and himself to permit the Court to conclude that the calls were threatening in nature. Masuda alludes almost exclusively to deficiencies in TRC's general approach to telephone calls.[18] Thus, the Court denies summary judgment as to this alleged violation.

■ The Court also denies summary judgment with respect to the allegedly harassing demand that Masuda send "assigned insurance forms" to TRC within one week. This is not the type of "oppressive" conduct that Congress intended to proscribe when it enacted § 1692d.[19] *See Bieber v. Associated Collection Services, Inc.*, 631 F.Supp. 1410, 1417 (D.Kan.1986) (section 1692d protects a debtor's "tender sensibilities" only from "oppressive and outrageous conduct," and "[s]ome inconvenience or embarrassment to the debtor is a natural consequence of debt collection"); *Beattie v. D.M. Collections, Inc.*, 754 F.Supp. 383, 394 (D.Del.1991) (LEXIS, Genfed library, Dist file) (section 1692d "prohibits only oppressive and outrageous conduct").

*Unfair Practices*

■ Plaintiff argues that TRC violated § 1692f(8) by including on the outside of

envelopes mailed to Masuda (1) notice that theft of mail or obstruction of delivery is a federal crime, (2) the language "PERSONAL & CONFIDENTIAL" and (3) the phrase "Forwarding and Address Correction Requested". *See* Plaintiff's Exhibits 30, 31. Section 1692f(8) prohibits the use of "any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by the use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business."

While the writing on TRC's envelopes appears to violate the statutory proscription against the use of "any language" other than a return address, the statute should not be construed to prohibit this activity. In some cases, a strict interpretation of the FDCPA may be necessary to protect consumer privacy and prevent embarrassment to consumers. *See* S.Rep. No. 95–382, 95th Cong. 1st Sess. at 2–4, *reprinted in* 1977 U.S.Code Cong. & Admin. News at 1696–1698. Congress' interest in protecting consumers, however, would not be promoted by proscribing benign language. Congress enacted § 1692f(8) simply to prevent debt collectors from "using symbols on envelopes indicating that the contents *pertain to debt collection.*" *Id.* at 8, *reprinted in* 1977 U.S.Code Cong. & Admin.News at 1702 (emphasis added).

In *Rutyna v. Collection Accounts Terminal, Inc.*, 478 F.Supp. 980, 982 (N.D.Ill. 1979), the court held that language on an envelope revealing that the sender was a debt collector violated § 1692f(8). Such information could embarrass the alleged debtor, since others might see the envelope and think worse of the recipient. *Id.* The language about which Masuda complains does not raise such concerns. Summary judgment is therefore denied as to this alleged violation.

---

makes no reference to the repeated mailing of letters.

**18.** Plaintiff's evidence would be more persuasive in a class action suit against the collection agency. The Court, however, has already

denied plaintiff's motion to amend his complaint to bring a class action. Minute Order of July 24, 1990.

**19.** The demand for a rapid response does, however, violate § 1692g(a) as discussed above.

*Misrepresentations*

Plaintiff charges TRC with numerous violations of § 1692e which prohibits debt collectors from making false or misleading representations in connection with the collection of any debt. With the exception of the violation of § 1692e(3) discussed above, the Court denies summary judgment as to alleged violations of § 1692e.

*Damages*

■ Under the FDCPA, an individual plaintiff may recover from a debt collector who violates the Act (1) "any actual damage sustained" by the plaintiff, (2) "such additional damages as the court may allow, but not exceeding $1,000," and (3) "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a) (1988). Congress has provided courts with discretion to establish the precise amount of additional damages. *Pipiles,* 886 F.2d at 27. In assessing damages, a court must consider "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." 15 U.S.C. § 1692k(b)(1) (1988).

Given the seriousness of the false and unfair representation that attorney Wolfe was retained to collect plaintiff's alleged debts, the Court awards to plaintiff $1,000 in statutory damages.[20] The number of violations committed by TRC and the willingness of TRC to ignore clear statutory proscriptions also support this damage award. As to the amount of actual damages, costs, and attorney's fees—if any—to which plaintiff is entitled, the Court re-

serves judgment until a further hearing can be held on these issues.

IT IS SO ORDERED.

---

**20.** Plaintiff Masuda argues that the FDCPA authorizes an award of statutory damages of up to $1,000 per violation and does not limit statutory damages to $1,000 in any single lawsuit. 15 U.S.C. § 1692k(a)(2)(A) provides that a debt collector who fails to comply with any provision of the FDCPA may be liable for, "in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000." The Court need not and does not decide whether the FDCPA authorizes an award of

additional damages of up to $1,000 per violation, per communication, per debt, or per lawsuit. Regardless of the interpretation of § 1692k(a)(2)(A), the Court, in its discretion, concludes that a statutory damages award of $1,000 is appropriate under the facts of this case. *Cf. Harvey v. United Adjusters,* 509 F.Supp. 1218, 1222 (D.Or.1981) (rejecting plaintiff's contention that the FDCPA authorizes statutory damages award of up to $1,000 per violation).