**Gwendolyn DALTON, Plaintiff,**

v.

**FMA ENTERPRISES, INC.,
et al., Defendants.**

No. 95–396–CIV–FTM–17.

United States District Court,
M.D. Florida,
Fort Myers Division.

Feb. 3, 1997.

Daniel A. Edelman, Cathleen M. Combs, Edelman & Combs, Chicago, IL, and Thomas

Stephen Heidkamp, Dryden & Heidkamp, Ft. Myers, FL, for Plaintiff.

Richard E. Berman, W. Todd Boyd, and Michéle McNichol, Katz, Barron, Squitero, Faust & Berman, P.A., Miami, FL, for Defendants.

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

KOVACHEVICH, Chief Judge.

The cause is before the Court on the plaintiff's motion for partial summary judgment, memorandum of law, and statement of material facts, filed October 10, 1996 (Docket Nos. 70, 71 and 74) and response thereto, filed October 24, 1996 (Docket No. 77) and the defendants' motion for summary judgment and memorandum of law, filed October 11, 1996 (Docket No. 76) and response thereto, filed January 8, 1997 (Docket No. 99).

## PROCEDURAL BACKGROUND

This action was commenced on December 4, 1995, with the filing of a "Class Action Complaint" against the defendants, FMA Enterprises, Inc. (hereafter "FMA") and Loraine E. Lyons (hereafter "Lyons"). The complaint was filed pursuant to 15 U.S.C. § 1692, et seq., the Fair Debt Collection Practices Act (hereafter "the FDCPA or the Act"). The complaint asserted two (2) causes of action:

Count I-violation of the Act by:

a. causing demand letters be sent over mechanically reproduced name of attorney not actually involved in handling of the file (violation §§ 1692e, 1692e(3), 1692e(5), 1692e(10) and 1692g);

b. threatening action which is not intended to be taken or cannot be legally taken;

c. causing to sent collection letters which use false representations and deceptive means to collect or attempt to collect the alleged debt (violation of § 1692e(10)); and,

d. use of a form and reproduced signature for the purpose of deceiving consumers into believing an attorney was involved in collecting the debt (violation of § 1692j).

Count II-violation of Florida Statutes, § 559.72(10)–(11), by use of communication falsely giving the appearance of being authorized, issued or approved by an attorney-at-law.

The plaintiff filed a motion and an amended motion to certify class action (Docket Nos. 15 and 41), which were opposed by the defendants (Docket No. 39). After due consideration, the Court denied the motion for class certification. Dalton v. FMA Enterprises, 1996 WL 379105 (Fla.M.D. July 1, 1996) (Docket No. 53). A subsequent motion to reconsider the denial of class certification was also denied. (Docket No. 80). Now pending before the Court are cross-motions for summary judgment.

## STANDARD OF REVIEW

This circuit clearly holds that summary judgment should only be entered when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact when all the evidence is viewed in the light most favorable to the nonmoving party. Sweat v. Miller Brewing Co., 708 F.2d 655 (11th Cir.1983). All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. Hayden v. First National Bank of Mt. Pleasant, 595 F.2d 994, 996–7 (5th Cir.1979), quoting Gross v. Southern Railroad Co., 414 F.2d 292 (5th Cir.1969). Factual disputes preclude summary judgment.

The Supreme Court of the United States held, in Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986):

In our view the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322, 106 S.Ct. at 2552, 91 L.Ed.2d at 273.

The Court also said, "Rule 56(e) therefore requires that nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogato-

ries, and admissions on file,' designate 'specific facts showing there is a genuine issue for trial.'" *Celotex Corp.*, at 324, 106 S.Ct. at 2553, 91 L.Ed.2d at 274. As the district court in *Coghlan v. H.J. Heinz Co.*, 851 F.Supp. 808 (N.D.Tex.1994), summarized:

> Although a court must "review the facts drawing all inferences most favorable to the party opposing the motion," ... the nonmovant may not rest on mere allegations or denials in its pleadings; in short, "the adverse party's response ... must set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e). However, merely colorable evidence of evidence not significantly probative will not defeat a properly supported summary judgment ... The existence of a mere scintilla of evidence will not suffice ... (cites omitted) at 810–811.

In fact, summary judgment may not be appropriate even when the parties agree on the basic facts, if they "disagree about the inferences that should be drawn from those facts." *Zanzuri v. G.D. Searle & Co.*, 748 F.Supp. 1511, 1513–14 (Fla.S.D.1990) (cite omitted).

### *FACTS*

The following facts are undisputed in this case:

(1) Plaintiff, GWENDOLYN DALTON ("Dalton"), is an individual who resides at 1225 SW 49th Street, Cape Coral, Florida 33914. (Docket No. 74, ¶ 1).

(2) Defendant, FMA ENTERPRISES, INC. ("FMA"), is a corporation with its principal place of business at 11811 North Freeway, Suite 900, Houston, Texas 77060. (Docket No. 74, ¶ 2).

(3) Defendant, LORAINE LYONS ("Lyons"), is an attorney and was employed by FMA at all relevant times as General Counsel. She is licensed to practice law in both the State of Texas and the United States District Court for the Southern District of Texas. (Docket No. 72, App. A, 1st Doc., ¶ 3; App. E, ¶ 2).

(4) FMA is engaged in the business of collecting consumer debts and regularly attempts to and collects consumer debts allegedly owed to persons other than FMA. (Docket No. 72, App. A, 1st Doc., ¶ 6).

(5) FMA regularly uses the mails when attempting to collect debts incurred for personal, family, or household purposes. (Docket No. 72, App. A, 1st Doc., ¶ 7).

(6) FMA is a debt collector as defined in the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et. seq. ("FDCPA"). (Docket No. 74, ¶ 3).

(7) On or about July 25, 1995, FMA caused to be mailed to Dalton the letter attached as Appendix B to the plaintiff's memorandum in support of summary judgment (Docket No. 72). This one (1) page letter states, in pertinent part and not to scale:

[FMA street address]                    [FMA letterhead]

July 25 1995                    [FMA mailing address]

[Dalton's address]          ACCOUNT #: E64803
                            AMOUNT: $10083.59

***PLEASE DETACH AND RETURN IN THE
ENCLOSED ENVELOPE WITH YOUR PAYMENT* * *

| CREDITOR | ACCOUNT # | AMT OWED |
|---|---|---|
| CHASE MANHATTAN BANK, U | 0004226920036560 | 10083.59 |

YOUR ACCOUNT HAS BEEN LISTED WITH THIS OFFICE FOR COLLECTION. TO PREVENT US FROM CONTACTING YOU AGAIN FOR PAYMENT IN FULL, PLEASE MAIL YOUR PAYMENT OR CALL HOUSE ACCOUNTS AT (800) 999–3438.

UNLESS YOU NOTIFY THIS OFFICE WITHIN 30 DAYS AFTER RECEIVING THIS NOTICE THAT YOU DISPUTE THE VALIDITY OF THIS DEBT OR ANY PORTION THEREOF, THIS OFFICE WILL ASSUME THIS DEBT IS VALID. IF YOU NOTIFY THIS OFFICE IN WRITING WITHIN 30 DAYS FROM RECEIVING THIS NOTICE, THIS OFFICE WILL: OBTAIN VERIFICATION OF THE DEBT OR OBTAIN A COPY OF A JUDGMENT AND MAIL YOU A COPY OF SUCH JUDGMENT OR VERIFICATION. IF YOU REQUEST THIS OFFICE IN WRITING WITHIN 30 DAYS AFTER RECEIVING THIS NOTICE, THIS OFFICE WILL PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR, IF DIFFERENT FROM THE CURRENT CREDITOR.

THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

---

Readily apparent from its face, Lyons' name does not appear in any form on this letter.

(8) On or about August 18, 1995, FMA arranged for the preparation and transmittal of the letter attached as Appendix C to the plaintiff's memorandum in support of summary judgment (Docket No. 72) to Dalton, hereinafter the August letter. Contrary to the previous letter, this letter bears a mechanically reproduced facsimile of Lyons' signature. (Docket No. 74, ¶ 6). This one (1) page letter states, in pertinent part and not to scale:

[FMA street address]

[FMA letterhead]
[FMA's hours of operation]

LORAINE E. LYONS
GENERAL COUNSEL

Aug 18 1995

[FMA mailing address]

[Dalton's address]

RE           : DELINQUENT AC-
               COUNT
CREDITOR  : MBNA        AMERICA
               BANK N A
ACCOUNT # : E33214
FILE #       : 74990999145199
BALANCE   : $2267.41

*** PLEASE DETACH AND RETURN IN THE
ENCLOSED ENVELOPE WITH YOUR PAYMENT ***

I am general counsel for FMA Enterprises, Inc. and your creditor has authorized collection efforts on the above referenced debt.

If you intend to resolve this matter on a voluntary basis, send payment in full to the FMA Legal Department at the above stated address. Should you ignore this demand and fail to remit payment, we will have no choice but to initiate additional collection procedures.

To avoid further collection steps, I urge to you give this matter the attention it deserves.

Sincerely,

/s/

Loraine E. Lyons
Attorney at Law

UNLESS YOU NOTIFY THIS OFFICE WITHIN 30 DAYS AFTER RECEIVING THIS NOTICE THAT YOU DISPUTE THE VALIDITY OF THIS DEBT OR ANY PORTION THEREOF, THIS OFFICE WILL ASSUME THIS DEBT IS VALID. IF YOU NOTIFY THIS OFFICE IN WRITING WITHIN 30 DAYS FROM RECEIVING THIS NOTICE, THIS OFFICE WILL: OBTAIN VERIFICATION OF THE DEBT OR OBTAIN A COPY OF A JUDGMENT AND MAIL YOU A COPY OF SUCH JUDGMENT OR VERIFICATION. IF YOU REQUEST THIS OFFICE IN WRITING WITHIN 30 DAYS AFTER RECEIVING THIS NOTICE, THIS OFFICE WILL PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR, IF DIFFERENT FROM THE CURRENT CREDITOR. THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

---

(9) On or about September 29, 1995, FMA arranged for the preparation and transmittal of the letter attached as Appendix D to the plaintiff's memorandum in support of summary judgment (Docket No. 72) to Dalton, hereinafter the September letter. Similar to the previous letter, this letter also bears a mechanically reproduced facsimile of Lyons' signature. (Docket No. 74, ¶ 8). This one (1) page letter states, in pertinent part and not to scale:

[FMA street address]                                             [FMA letterhead]
                                                                [FMA's hours of operation]

LORAINE E. LYONS
GENERAL COUNSEL

Sept 29 1995                                             [FMA mailing address]

[Dalton's address]          ACCOUNT # S:E33214
                            AMOUNT     : $2267.41

*** PLEASE DETACH AND RETURN IN THE
ENCLOSED ENVELOPE WITH YOUR PAYMENT ***

CREDITOR: MBNA AMERICA BANK N A
ACCOUNT # : E33214
FILE # : 74990999145199
BALANCE: $2267.41

*** SETTLEMENT OFFER ***

We have authority to settle the above referenced debt.

Our client will accept 50% of the balance owed to settle this obligation in full. This settlement offer allows for one-time cash payment only and will expire 30 days from the date of this letter.

To take advantage of this settlement offer, return this letter with your payment. Should you choose not to take advantage of this offer, be advised that this account is subject to further collection procedures.

Our client may be required by law to report this settlement to one or more taxing authorities. Our client makes no representation about tax consequences this settlement may have or reporting requirements which may be imposed on the client. You

should consult independent tax counsel of your own choosing if you desire advice about any tax consequences which may result from this settlement.

We feel this [sic] a large concession on the part of our client. Please use your good judgment and attend to this matter today.

Sincerely,

/s/

Loraine E. Lyons
Attorney at Law

THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

---

(10) According to the undisputed facts as attested by Lyons,[1] Lyons was the only authorized person within FMA to send and mail the August and September letters. (Docket No. 72, App. E, ¶¶ 6, 10). Lyons created both of these letters and "had an active role in determining the procedures by which the letters should be sent." (Docket No. 72, App. E, ¶ 4).

(11) The August letter sent to Dalton was a type of form letter that Lyons authorized pursuant to a uniform, established procedure. The process starts when an FMA supervisor recommends certain FMA accounts for legal review by Lyons. Lyons receives these legal review accounts through the computer and prints them out. Lyons reviews this printed list of legal review accounts, which includes the following information: (1) the file number, (2) the consumer's name, (3) the original balance, (4) the current balance, (5) the client code, and (6) the status of the account. To "verify the integrity of the [legal review] recommendation and check the accuracy of the printed document," Lyons performs a random audit on at least 10% of the accounts designated for legal review. Finally, "[a]fter making the necessary notations or [file] transfers," Lyons then authorizes the sending of an August-type letter by manually imputing codes into FMA's computer system. (Docket No. 72, App. E, ¶¶ 5–6).

(12) These computer codes are received by a printing company, Lason Systems, Inc. (hereafter "Lason"), which prints, sends, and mails these August-type letters to the debtors. The printing company maintains Lyons' facsimile signature and FMA's letterhead on file. In order to confirm that Lason is sending the appropriate letters, FMA creates a dummy file with FMA's address as the mailing address. (Docket No. 72, App. E, ¶ 7).

(13) The September letter sent to Dalton was a type of form letter that Lyon authorized pursuant to a uniform, established procedure. After the August-type letter is mailed, collectors in FMA's legal department receive the file and attempt to contact the debtor for payment of the outstanding balance. If the debtor does not pay the balance or is non-responsive, an FMA supervisor recommends to Lyons that she (1) send a settlement offer (a September-type letter); (2) discuss filing a lawsuit with the client; or (3) close the account. If the FMA supervisor recommends option (1) above, he or she transfers, via the computer, such files to Lyons. Lyons then reviews these files, which contain the following information: (1) the file number, (2) the debtor's name, (3) the original balance, (4) the current balance, (5) the client code, and (6) the status of the account. To "verify the integrity of the [legal review] recommendation and check the accuracy of the printed document," Lyons performs a random audit on at least 10% of the accounts designated for legal review. Finally, "[a]fter making the necessary notations or [file] transfers," Lyons then authorizes the

---

1. This affidavit also provides the basis for the findings of fact in paragraphs 12–18.

sending of an September-type letter by manually imputing codes into FMA's computer system. (Docket No. 72, App. E, ¶¶ 8–10).

(14) Once it receives these computer codes, the printing company prints, sends, and mails September-type letters to debtors in the same manner as it does August-type letters, as discussed in paragraph 13, *supra.* (Docket No. 72, App. E, ¶ 11).

(15) Lyons' review procedures are identical with regard to generating August-type letters (*see* ¶ 12) and September-type letters (*see* ¶ 14). (Docket No. 72, App. E, ¶¶ 12–13).

(16) Lyons' involvement with the August-type and September-type letters varies with each account, in that she: (1) may audit certain files up to two (2) times, depending on the result of the random audit selection process; (2) communicates with certain debtors over the telephone; and (3) receives and reviews mail and facsimiles addressed to her. (Docket No. 72, App. E, ¶ 14).

(17) Lyons fails to state what level of involvement she had with the August and September letters sent to Dalton.

### DISCUSSION

■ The purposes of the Fair Debt Collection Practices Act are to:

[E]liminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses. 15 U.S.C. § 1692.

The Act was "not intended to shield ... consumers from the embarrassment and inconvenience which are the natural consequences of debt collection." *Higgins v. Capitol Credit Services, Inc.,* 762 F.Supp. 1128, 1135 (D.Del.1991) (cite omitted).

A debt collector is prohibited from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt" including, but not limited to the "false representation or implication that any individual is an attorney or that any communication is from an attorney" and the

use or distribution of written communication ... which creates a false impression as to its source, authorization, or approval." 15 U.S.C. § 1692e(3) and (9).

The defendant, Loraine E. Lyons, is an attorney who participated in some manner in the debt collection processes against this, and other, debtors on a regular basis as FMA's general counsel. In *Heintz v. Jenkins,* 514 U.S. 291, ——, 115 S.Ct 1489, 1489, 131 L.Ed.2d 395, 398 (1995), the Supreme Court of the United States addressed the issue of whether "the term 'debt collector' in the Fair Debt Collection Practices Act, (cites omitted), applies to a lawyer who 'regularly,' *through litigation,* tries to collect consumer debts." The Court answered the question in the affirmative, concluding that "the Act does applies to attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation." *Id* at ——, 115 S.Ct. at 1493, 131 L.Ed.2d at 402. Thus, there is no question that the defendants are subject to the provisions and requirements of the FDCPA. The question immediately before the Court, on the cross-motions for summary judgment, is whether or not there is a genuine issue of fact as to whether or not the defendants violated the Act.

One of the seminal cases relied on by the parties is *Clomon v. Jackson,* 988 F.2d 1314 (2nd Cir.1993). In *Clomon,* the appellant, Jackson, an attorney employed part-time, as general counsel, by a debt collection agency (hereafter "the Collector"), appealed a judgment by the trial court that he violated the Act. In that case, the debt collection agency issued debt collection letters to approximately one million debtors each year through a computerized mass-mailing system. The debt collection agency received computer tapes from the company to whom a debt was allegedly owed. The tapes were transferred to the Collector's computer system which inserted relevant information into a form letter requesting payment. The preparation and mailing of the form letter was automatic. A series of letters would follow, based on a predetermined schedule, if payment was not received.

Five of the letters sent to the appellee were on the letterhead of the attorney Jackson. The letters were not actually signed by Jackson, rather they bore a mechanically reproduced facsimile of the signature of Jackson. Jackson approved the form letters used and approved the procedures for sending the letters; however, he did not have any direct personal involvement in the mailing of the letters, he never reviewed the files, he never reviewed or signed the letters, he never gave any advice to the creditor on the particular circumstances of the debtor, and he never received any instructions from the creditor about what steps to take in regard to the debtor.

The appellate court adopted the "least sophisticated consumer" standard, an objective standard, for determination of whether a collection letter violates the Act. *See Jeter v. Credit Bureau, Inc.,* 760 F.2d 1168 (11th Cir.1985) (also adopting the least sophisticated consumer standard). The court went on to find that Jackson had violated the Act in several ways.

In the first instance, the use of Jackson's signature and letterhead was enough under the relevant standard to give the false and misleading "impression that the letters were from an attorney." In fact, the court found that:

> [T]he fact that Jackson played virtually no day-to-day role in the debt collection process supports the conclusion that the collection letters were not "from" Jackson in any meaningful sense of that word ... We also note that the language used in the collection letters was sufficient to cause the least sophisticated consumer to believe that Jackson himself had considered individual debtors' files and had made judgments about how to collect individual debts ... Th[e] language was false or misleading because, as noted above, Jackson played virtually no role in the debt collection process ... at 1320–21.

Though the court recognized that sometimes mass mailing may be the only feasible means of contacting large numbers of debtors, it found that the boundaries set by the Act must be adhered to even in regard to such mass mailings, stating: "No mass mailing technique is permissible—regardless of how effective it might be—if that technique constitutes a false, deceptive or misleading communication." at 1321. Further, the court found that:

> [T]he use of an attorney's signature on a collection letter implies that the letter is "from" the attorney who signed it; it implies, in other words, that the attorney directly controlled or supervised the process through which the letter was sent. We have also found here that the use of an attorney's signature implies—at least in the absence of language to the contrary—that the attorney signing the letter formed an opinion about how to manage the case of the debtor to whom the letter was sent. In a mass mailing these implications are frequently false: the attorney whose signature is used might play no role either in sending the letters or in determining who should receive them. For this reason, there will be few, if any, cases in which a mass-produced collection letter bearing the facsimile of an attorney's signature will comply with the restriction imposed by § 1692e. at 1321.

*See also United States v. National Financial Services, Inc.,* 98 F.3d 131 (4th Cir.1996) (affirming entry of permanent injunction where the attorney did not sign the dunning notices, did not receive or review information from creditor computer tapes, and did not read or review the dunning letters prepared by the debt collector's computers under his name; employing the "capacity of the statement to mislead" test in finding violations of the Act); *Avila v. Rubin,* 84 F.3d 222 (7th Cir.1996) (affirming summary judgment for plaintiff where attorney reviewed and approved general form of letters, did not personally prepare, sign or review letters sent to targets (approximately 270,000 letters a year mailed), and the letters were actually the product of a nonattorney "legal assistant collector"; finding that the attorney had no "real involvement" in the process and the " 'unsophisticated consumer' getting the letter from an 'attorney' knows the price of poker has just gone up ... [c]onsumers are inclined to more quickly react to an attorney's threat"); *Masuda v. Thomas Richards*

& Co., 759 F.Supp. 1456 (C.D.Cal.1991) (granting summary judgment for plaintiff where attorney drafted form letter, did not participate in decision of when to send collection letters, had not reviewed file, and was not involved in the plaintiff's case; finding that under the Act an attorney who signs a dunning letter must "review the debtor's file and have some knowledge about the alleged debt"); and *U.S. v. Central Adjustment Bureau, Inc.*, 667 F.Supp. 370 (N.D.Tex.1986) (entering judgment for the Government, after trial, where the debt collector used "attorney letters" in flagrant disregard of the Act).

## I. VIOLATION OF FDCPA BASED ON ATTORNEY LYONS' INVOLVEMENT.

■ The Court concludes that there is a genuine issue of material fact as to whether Lyons and FMA violated the FDCPA based on her level of involvement in the attempted debt collection activity directed at Dalton. Based on the Court's findings of fact, Lyons habitually reviewed debtors' names, original balances, current balances and statuses of the accounts recommended for legal review, client codes, and file numbers. However, neither party advanced any definitive proof of Lyons' specific involvement with Dalton's accounts. Therefore, it is within the province of the jury to assess the credibility of this habit evidence. Fed.R.Evid. 406.

Even if Lyons acted in conformity with her established review procedures on Dalton's accounts, this level of involvement presents a genuine issue of fact as to whether it was "meaningful" involvement. It is clear that the parties draw different, albeit reasonable, inferences from the facts. This reasonable disagreement is a sufficient reason to deny both parties' motions for summary judgment. *Zanzuri*, 748 F.Supp. at 1513–14.

The Court has reviewed the *National Financial, Clomon, Avila,* and *Masuda* cases, where the use of attorneys' letters were found to violate the FDCPA, and finds them distinguishable from the instant case in resolving the pending summary judgment motions. The cited cases involved attorneys who clearly had no involvement in the process of collecting alleged debts from the plaintiffs.

In this case, however, the defendants have come forward with "evidence" which the Court believes a reasonable jury might hear and find to constitute "meaningful" attorney involvement in the debt collection process. On the other hand a reasonable jury might reject that contention and find no "meaningful" involvement by the attorney, but rather mere paper shuffling. The possibility of a jury finding for either party precludes the entry of summary judgment for either the plaintiff or the defendants. The issue must be presented to the fact-finders in this case, the jury.

## II. VIOLATIONS OF THE ACT BASED ON THE CONTENT OF THE LETTERS.

■ Because the parties have not advanced any serious argument or record evidence as to whether FMA and Lyons "threatened action which [was] not intended to be taken or [could not] be legally taken," the Court concludes that neither party has satisfied their summary judgment burdens. Just as the Court concluded that the legally of FMA and Lyons' actions is a triable issue, the Court concludes that FMA's intent remains a genuine issue of fact.

## III. COUNT II: FLORIDA'S FAIR DEBT COLLECTION PRACTICES ACT.

The parties do not address this count in their motions and responses. As such, both have failed to meet their summary judgment burdens. Accordingly, it is

**ORDERED** that the plaintiff's motion for partial summary judgment (Docket No. 70) be **denied;** the defendants' motion for summary judgment (Docket No. 76) be **denied;** and the clerk of the court shall immediately set this case for trial in the Tampa Division [2] for the trial calendar commencing February 10, 1997, with trial protection until February 18, 1997, based on the parties' request to the

---

**2.** Pursuant to Local R.M.D.Fla. 1.02(e), the Court exercises its discretion by transferring the trial of

this case to the Tampa Division instead of keeping it in the Fort Myers Division.

assigned magistrate judge that this case be tried in February (Docket No. 94).