Kathleen R. IRWIN, et al., Plaintiffs,

v.

Owen T. MASCOTT, et al., Defendants.

No. C 97–4737 JL.

United States District Court,
N.D. California.

Aug. 31, 2000.

Paul Arons, Law Office of Paul Arons, Redding, CA, O. Randolph Bragg, Horowitz Horowitz & Associates, Chicago, IL, Lorraine Ellen Baur, Ukiah, CA, for Plaintiffs.

Mark E. Ellis, June Coleman, Murphy Pearson Bradley & Feeney, Sacramento, CA, Jacob Koper, Concord, CA, for Defendants.

ORDER GRANTING PARTIAL SUMMARY JUDGMENT AS TO LIABILITY AND DAMAGES AND ORDERING PRELIMINARY INJUNCTION

LARSON, United States Magistrate Judge.

## INTRODUCTION

Plaintiffs' Motion for Partial Summary Judgment and Preliminary Injunction

came on for hearing on January 19, 2000. Appearing for Plaintiffs were Paul Arons and Lorraine Baur. Appearing for Defendants were Mark Ellis and June Coleman. The Court heard oral argument and took the matter under submission.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Kathleen R. Irwin, Nancy Heth, and Lorraine L. Castaneda filed suit on December 31, 1997, for damages and injunctive relief in this action against defendants Owen T. Mascott, Commonwealth Equity Adjustments, Inc. ("CEA"), and Eric W. Browning, for alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* ["FDCPA"], and the California Unfair Business Practices Act, Cal. Business & Professions Code §§ 17200, *et seq.* ("CUBPA").

Plaintiffs allege that CEA and its executive director Browning through its then attorney Owen Mascott violated the FDCPA and CUBPA by means of written communications to debtors which:

1) contained impermissible threats of future litigation;

2) sought add-on charges and damages which CEA (and its attorneys) were not entitled to collect under California law; and

3) often contained draft lawsuits which Mascott had no intention of filing, to extort extra charges from debtors.

(Complaint, ¶¶ 36–43, 51–61).

The class was certified on March 24, 1999. Irwin v. Mascott, 96 F.Supp.2d 968 (N.D.Cal.1999).[1] The class is defined as follows:

Umbrella Class

1. (i) all persons with addresses in California; (ii) to whom any defendant has sent or will send or has caused or will cause to be sent a letter containing demands or representation which are identical or similar to the demands or representations contained in any of the letters attached as Exhibits 1–10 to the Complaint; (iii) in connection with attempts to collect debts arising from dishonored checks (iv) which checks were not returned as undeliverable by the Post Office.

B. Sub–Classes

Sub-class A: Those members of the umbrella class whose checks were written for personal, family or household purposes at any time on or after January 1, 1997 [the FDCPA class];

Sub-class B: Those members of the umbrella class whose checks were written for any purpose at any time on or after January 1, 1994 [the CUBPA class].

*Id.* at 982.

Defendants' Motion to Add Third-party Defendants was denied on February 11, 2000. *Irwin v. Mascott,* 94 F.Supp.2d 1052 (N.D.Cal.2000) Since the motion for summary judgment was submitted, the parties have filed approximately ten discovery motions.[2]

## THIS MOTION

Plaintiffs move for summary judgment, including findings of fact and conclusions of law that Defendants' debt collection practices violate the FDCPA and the CUBPA, and that Defendants are liable to Plaintiffs for damages. Plaintiffs also move for entry of a preliminary injunction that Defendants cease all illegal debt collection practices.

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together

---

**1.** First published at 186 F.R.D. 567 (N.D.Cal. 1999)

**2.** None of these motions are pertinent to the court's decision on summary judgment. An order was filed on August 23, 2000, ruling on all the pending discovery motions.

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). "The inquiry performed by the trial court is whether there exist 'any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Summers v. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997) (citation omitted). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is "material" only if it could affect the outcome of the suit under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202, (1986).

To withstand a motion for summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue of material fact in dispute. *See* Fed.R.Civ.P. 56(e). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, "the moving party is entitled to a judgment as a matter of law." *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The Court does not make credibility determinations with respect to evidence offered, and is required to draw all inferences in the light most favorable to the nonmoving party. See *T.W. Elec. Serv., Inc.*, 809 F.2d at 630–31 (*citing Matsushita Elec. Ind. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Summary judgment is therefore not appropriate "where contradictory inferences may reasonably be drawn from undisputed evidentiary facts ..." *Holl-*

*ingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324, 1335 (9th Cir.1980).

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.

If the moving party meets its initial burden, the opposing party must then "set forth specific facts showing that there is some genuine issue for trial" in order to defeat the motion. *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511; Fed. R.Civ.P. 56(e). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348. A grant of summary judgment is reviewed de novo by the appellate court; a denial of summary judgment is reviewed for an abuse of discretion. *U.S. v. $5,644,540.00 in U.S. Currency*, 799 F.2d 1357, 1361 (9th Cir.1986).

## PLAINTIFFS' CONTENTIONS

Plaintiffs ask this Court to issue an order granting summary judgment as to the liability of Defendant CEA for violations of the FDCPA, and the CUBPA, as well as plaintiffs' right to damages, restitution, and declaratory and injunctive relief. Plaintiffs do not request an award of a specific amount of either damages, restitution or interest by this motion. The FDCPA provides for both actual and statutory damages, up to the statutory ceiling, according to the sound discretion of the trial court. 15 U.S.C. § 1692k. *See also* 15 U.S.C. § 1692k(a)(2)(B) (class action damages limited to lesser of $500,000 or 1 per cent of debt collectors' net worth). *See also* 15 U.S.C.A.

§ 1692k(b)(1) (District court must consider frequency and persistence of noncompliance by debt collector, nature of such noncompliance, extent to which such noncompliance was intentional, and other relevant factors in deciding the amount of any "additional damages" awarded as a consequence of violation of the FDCPA.)

■ The CUBPA provides for both disgorgement of profits and injunctive relief as follows:

Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition.

Business & Professions Code §§ 17200, *et seq.*

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiffs ask this Court to make the following findings, as a matter of law:

*Liability*

■ 1) CEA[3] violates 15 U.S.C. § 1692 et seq., the Fair Debt Collection Practices Act ("FDCPA"), in particular §§ 1692e(2)(A), (10), and 1692(f), by seeking charges from check writers in excess of those expressly permitted by Cal. Civ. Code § 1719. (See Plaintiff's Memorandum of Points and Authorities at pages 19—23). § 1719 authorizes recovery of the face amount of the check, and treble damages at a minimum of $100, and a maximum of $1,500.00, provided the debt collector sends the check writer a certified letter informing him of the right to pay the check and a service charge within thirty days to avoid treble damages. § 1719 was amended January 1, 1997 to authorize an additional $25.00 service charge for uncleared checks. This amendment is not retroactive.

CEA routinely sends demand letters that do not conform to the provisions of § 1719, for example:

■ The "ADC Letter" (Plaintiffs' Appendix III in Support of Motion for Summary Judgment, Ex. 50) demands the face amount of the check, and $25.00 and interest. CEA is not entitled to interest.

■ The "AFW Letter" ( *Id.,*Ex. 181) adds a $35.00 "legal notice cost" to the check amount, service charge and interest. This "legal notice cost" is also an unauthorized charge to which CEA is not entitled under § 1719.

■ The "AFX Letter" ( *Id.,* Ex. 182) demands payment of the check amount, treble damages, a $25.00 bank charge, and interest. CEA is not entitled to treble damages, the $25.00 charge, or the interest.

CEA cannot establish that any of these letters were sent by certified mail, since, until the last few months,[4] CEA did not maintain any documentation that letters were sent certified.

CEA does not deny any of the factual allegations made by Plaintiffs regarding CEA's letters. (See "Defendant's Opposition" below)

■ The court has carefully reviewed the text of each letter and finds that all the letters violate the FDCPA, in particular §§ 1692e(2)(A), (10), and 1692(f), by seeking charges from check writers in excess of those expressly permitted by Cal. Civ. Code § 1719.

---

**3.** Findings regarding CEA also apply to its president Browning and its attorney Mascott.

**4.** This motion was first filed in November 1999.

2) CEA violates the FDCPA, in particular § 1692 et seq., §§ 1692e(2)(A), (10), and 1692(f), by seeking charges from check writers pursuant to Cal.Penal Code § 490.5.

§ 490.5 provides for penalties for someone who takes merchandise from a merchant without intent to pay for it:

"When an adult or emancipated minor has unlawfully taken merchandise from a merchant's premises ... the adult or emancipated minor shall be liable to the merchant ... for damages of not less than fifty dollars nor more than five hundred dollars, in addition to the retail value of the merchandise, if not recovered in merchantable condition ..."

Cal.Penal Code section 490.5.

Plaintiffs assert that CEA is invoking this section to try to extract penalties intended for shoplifters from consumers who write checks which do not clear. Plaintiffs contend that CEA has no idea what the intent of each check writer is, and that the merchants' right to invoke § 490.5 is unassignable. *Newman v. Checkrite California, Inc.,* 912 F.Supp. 1354, 1378 (E.D.Cal., 1995). Plaintiffs are correct and CEA does not offer any argument which directly contradicts this contention.

■■■ This court finds that Penal Code § 490.5 does not apply to a buyer who writes a check to a merchant and takes merchandise from the store with the merchant's knowledge and permission. The buyer in such an instance has lawfully taken merchandise. The failure of the buyer's check to clear does not make the buyer a shoplifter. CEA has no basis for assuming that every person who writes a check which later fails to clear knows at the time of writing it that it will not clear and, therefore, has no intent of paying the merchant. The court finds that CEA violates the FDCPA by threatening to impose penalties under Penal Code § 490.5 against consumers whose checks fail to clear.

3) CEA violates § 1692e(7), by sending collection letters which reference Cal.Penal Code § 490.5, because these letters state or imply that by writing a check that did not clear, the check writer has committed larceny. Again, Plaintiffs are correct, and CEA does not contradict this contention. This court finds that these letters violate the FDCPA.

4) CEA violates § 1692e(2) and (10), by sending collection letters which misrepresent the amounts due from consumers, or which contain false, deceptive or misleading representations regarding the respective rights and obligations of the debt collector and the consumer. This is part and parcel of the earlier contentions that CEA demands penalties and interest it has no right to. CEA does not counter this contention. This court finds that these letters violate the FDCPA.

■■■ 5) CEA violates § 1692e(3), and is liable for damages, by falsely representing that its dunning letters are communications from attorneys. The FDCPA prohibits "the false representation or implication that any individual is an attorney or that any communication is from an attorney" 15 U.S.C. § 1692e(3). Section 1692e(3) prohibits a debt collector from using an attorney's status to add to the force of its collection letters, unless the attorney is actually involved in the collection effort to the extent implied by the letter. Abuses by attorney debt collectors are more egregious than those of lay collectors, because a consumer fears more an attorney's improper threat of legal action than that of a debt collection employee who is not an attorney. A debt collection letter on an attorney's letterhead conveys authority and credibility. *Crossley v. Lieberman,* 868 F.2d 566, 570 (3d Cir.1989).

■■■ To determine whether a debt collector's dunning letters violate this provision, the appropriate standard of review is from the perspective of the "least sophisticated consumer." *Newman v. Checkrite, supra,* 912 F.Supp. at 1382. A

debt collector violates this section of the FDCPA when a letter appears to be sent by an attorney without the attorney's having both reviewed the debtor's file and gained some knowledge about the specific debt. *Id.* If the attorney did not first conduct an individual review of the debtor's case, or if the attorney did not determine if a particular letter should be sent, or if the attorney did not know the identity of the person to whom the letter was sent, the communication from the attorney is false and misleading under § 1692e(3).

*Id.*

As noted by the Second Circuit:

"[M]ass mailings may sometimes be the only feasible means to contact large numbers of delinquent debtors, particularly when many of those debtors owe relatively small sums. But it is also true that the FDCPA set boundaries within which debt collectors must operate. No mass mailing technique is permissible—regardless of how effective it might be—if that technique constitutes a false, deceptive or misleading communication ... [T]here will be few, if any, cases in which a mass-produced collection letter bearing the facsimile of an attorney's signature will comply with the restrictions imposed by section 1692e."

*Clomon v. Jackson,* 988 F.2d 1314, 1321 (2d Cir.1993). *See also Avila v. Rubin,* 84 F.3d 222 (7th Cir.1996) (mass-produced collection letters sent on attorney letterhead violated FDCPA where an attorney had no direct personal involvement in the creation, preparation or mailing of letters to a plaintiff.) *Id.* at 228–229.

**5.** *See generally,* Ex. 19 to Defendants' Appendix, CEA: General Counsel Job Description.

**6.** Ex. 6 to Defendants' Appendix, Mascott Deposition in *Scott v. Mascott, et al.* C–98–172Z (W.D.Wash.) at 21:18–10, 22:10 –18.

**7.** Ex. 5 to Defendants' Appendix of Exhibits in Support of Opposition, Mascott Deposition in

CEA sends collection letters on attorney letterhead signed by an attorney,[5] previously Owen Mascott, and more recently, Jacob Koper. Owen Mascott testified that he looked at spreadsheets of debtor data, including names, addresses, check amounts and merchant names. He reviewed the letters which were generated by using the spreadsheets in order to meet "compliance requirements," which he defined as "being aware of where letters with my name as part of it are being sent. You know, where and to whom and to what accounts." As he scanned the computer spreadsheets, he checked off each name.

Mascott reviewed the spreadsheets to see who was receiving letters, where the checks were being written and the amounts, and to sensitize himself to the volume and which checks were being written to which creditor-clients, for example 7–Eleven or J.C. Penney. When he started as general counsel for CEA, the printouts were well under an inch thick. Each quickly expanded to two and a half to three times as many printed names. He couldn't estimate how many.[6] He never decided not to send a letter, based on this review.[7] Mascott did not review debtor information in any detail until "it was reaching the point of considering actual litigation." He would neither approve nor disapprove the sending of a letter.[8]

CEA Manager Robert Hyde would bring Mascott information regarding debtors that Hyde thought should be sued. According to Hyde, Mascott made the decision to sue, but Hyde could not recall any time when Mascott told him to sue or not to sue someone.[9] The decision to settle a

*Carson v. CEA, et al.* C–97–0967 PHXROS (D.Ariz.) at 48:13–51:8.

**8.** Ex. 6 to Defendants' Appendix, Mascott Deposition in *Scott v. Mascott, et al.* C–98–172Z (W.D.Wash.) at 21:7–10, 22:10–12, 19–24.

**9.** Ex. 7 to Defendants' Appendix, Hyde Deposition at 233: 7—20, 236: 1—237:6.

case was made by either Owen Mascott or CEA's director of operations.[10]

After Jacob Koper became CEA's general counsel, he did not review the files of all 350,000 accounts handled by CEA in 1998.[11] CEA's Hyde testified that Jacob Koper "looked at" the 175,000 letters which went out in one month.[12] However, at the time of the deposition Hyde described Koper's duties as follows: to give his opinion whether CEA should file suit against a check writer, to make sure that letters are being sent to the right state, to obtain licenses for CEA in states which require it, to be sure letters weren't being sent out which referred to checks more than four years old and representing CEA in lawsuits filed against check writers.[13]

Mascott testified that he reviewed checks for dates which might be so old as to be outside the statute of limitations.[14] A non-attorney staff person screened for check writers who were in bankruptcy proceedings and removed their names from the list of those to whom letters would be sent.[15]

■ The court finds that Owen Mascott and Jacob Koper, as general counsel for CEA, neither conducted individual reviews of debtor files nor decided if a particular dunning letter should be sent, nor knew the identities of the check writers to whom individual letters were sent. The attorneys merely scanned the spreadsheets and the completed letters to satisfy some rote requirement that their eyes should fall on the documents before letters were sent out. The communications to check writers were not "from" an attorney

in any meaningful sense of the word, as discussed in *Clomon v. Jackson*, 988 F.2d at 1320 and *Newman v. Checkrite*, 912 F.Supp. at 1382. Consequently, the letters are false and misleading and as a matter of law violate the FDCPA.

■ 6) CEA violates § 1692e(5), by threatening to file lawsuits when it does not intend to do so, or is not legally capable of doing so. There is a two-pronged test for violations of this part of the FDCPA:

(1) whether the debt collector threatened legal action, and, if so,

(2) whether such action could legally be taken or whether the debt collector intended to take such action. *Newman v. Checkrite*, 912 F.Supp. at 1379.

■ Again, the court applies the "least sophisticated debtor" standard, in deciding whether there is a perceived threat of litigation. Plaintiffs contend that five of CEA's dunning letters satisfy the first prong of the test, even without an overt threat to sue, as long as the letter creates the impression that legal action is a real possibility. *Baker v. G.C. Services Corp.*, 677 F.2d 775, 778–779 (9th Cir.1982) (threat to refer account to attorney for collection held to be threat of unintended legal action).

■ In the case at bar, CEA wrote in its letters about "damages and court costs," stating that a check writer had ten days to pay to avoid a lawsuit, and included a sample lawsuit with its collection demand. Even a disclaimer such as "NO

10. Ex. 16 to Defendants' Appendix, Deposition of Eric Browning in *Carson v. CEA*, CIV97–0967PHXROS, (D.Ariz.), November 5, 1998, at 150:17 –22.

11. Ex. 7 to Defendants' Appendix, Hyde Deposition in case at bar, September 8, 1999, 249:24–26.

12. Ex. 7, Hyde Deposition, Vol. V. 580:16–19. The next question asked is if that review consisted solely of whether the letter was being sent out more than four years after a check

was written or whether letters designed for use in a particular state were being sent to check writers in that state, not whether the letter should be sent at all. 580:20–26.

13. Ex. 7 to Defendants' Appendix, at 578:21—580:4.

14. Ex. 6 to Defendants' Appendix at 22:10–18.

15. Ex. 6 to Defendants' Appendix at 22:25—23:4.

LEGAL ACTION HAS BEEN OR IS NOW BEING TAKEN AGAINST YOU" does not preclude liability, if in the context of the letter the debt collector is threatening to sue. *Bentley v. Great Lakes Collection Bureau,* 6 F.3d 60, 63 (2d Cir.1993). If the least sophisticated debtor would take a communication as threatening legal action, it violates the FDCPA. Four of CEA's letters contain threats to sue under these standards. CEA does not deny the contents of its letters.

Plaintiff contends that the first letter in the 490.5 series threatens suit as a matter of law. The first letter in the series is designated "ADX."

a. "ADX" Letter: (Plaintiffs' Appendix II in Support of Motion for Summary Judgment, Exs. 1,3,7)

> Because you converted the merchandise to your own use without having paid the purchase price thereof and without our client's consent, *a law suit may be filed against you.* Prior to filing a suit, our client has requested that we extend an out of court settlement offer. If you pay the Settlement Total below, which is a portion of the penalties our client would be entitled to under Penal Code 490.5, no suit will be filed against you. [Emphasis added.]

The letter sets forth "Potential Liability" if the Settlement Total is not paid. This includes "Court/Service" Fees of $220.00, plus a "Statutory Penalty" of $500.00, plus "Attorneys Fees" of $150. The alternative is presented in closing:

> If you fail to pay the Settlement Total, our client may be left with no other choice than to file a law suit for the Potential Liability above.

B. "ADR" Letter (*Id.,* Exs. 2,4,8,10,183,-194)

CEA uses the ADR letter second in the 490.5 series and the fourth in the 1719 series. This letter is titled:

NOTICE OF POSSIBLE MUNICIPAL COURT PROCEEDINGS

The letter states:

> This letter will serve as formal notice pursuant to Section 1033(b)(2) of the California Code of Civil Procedure that *suit may be initiated* against you in the Municipal Court and that the legal action could result in *a judgment* against you including (in addition to the outstanding amount of the obligation) the cost of the filing fee, the cost of service of process, and when specifically allowed by law, reasonable attorneys' fees. This judgment [may]/[will] subject you to wage garnishment(s), bank account levies, vehicle levies, and execution on your real and personal property, all at your expense. [Emphasis added.]

 There can be no genuine dispute that this letter threatens suit. The use of the word "may" does not mitigate the tone of the letter which purports to be a "formal notice," names a particular court, and references a legal action, a judgment, cost of service of process, attorneys' fees, garnishment and levies. This court finds that all the letters are calculated to intimidate the least sophisticated consumer into believing that legal action against her is imminent.

c. "SC" and "1719" Letters (*Id.,* Exs. 184,185,186,195)

The fifth letter in the 1719 series, designated "1719," and the third letter in the 490.5 letter series, designated "SC," are virtually identical. They are printed on attorney letterhead. They advise the check writer:

> Our office has been retained by CEA to *file a lawsuit* against you, regarding the unpaid balance above.

> Enclosed you will find that a draft complaint for *a lawsuit* has been prepared and may be filed in the Municipal Court of County [sic] on or after [a specific date]. [Emphasis added.]

CEA states in the letter that if the payment demands are not met before the specified date, a lawsuit may be filed the following day. The sample complaint enclosed with the letter includes the check writer's name and details concerning the check. Sometimes CEA includes a summons with the check writer's name.

CEA added the heading: **YOU HAVE NOT YET BEEN SUED.** This seems to indicate that there is but a brief grace period to pay CEA's demand after which the check writer will be sued. All in all, the letter communicates that (1) a lawyer has been hired to sue the check writer; (2) the lawsuit will be filed on a specific date if payment isn't made; and (3) a lawsuit, as exemplified by the mock complaint, will be filed if the check writer does not pay immediately. This letter indicates that the debtor's only options are either payment or being sued.

██ The court finds that this process constitutes a threat to sue, as a matter of law. *U.S. v. National Financial Services, Inc.*, 820 F.Supp. 228, 234–235 (D.Md.1993) (letter stating that "only your immediate payment will stop further legal action" was threat to sue in violation of FDCPA.) *See also Crossley v. Lieberman*, 868 F.2d 566 (3d Cir.1989) (abuses by attorney debt collector more egregious than those of lay collectors because consumer reacts with more duress.) *Id.* at 570. CEA Business Manager Hyde testified that having a lawyer's name on it "definitely helps" the impact of a letter.[16]

d. The "AFW" Letter (*Id.*, Ex. 181)

██ In the third letter in the 1719 series, the "AFW" letter, CEA warns the debtor of "Potential Liability" which includes "Filing Cost" and "Court Costs." The obvious implication is that a costly lawsuit will be filed unless the debtor pays the "Settlement Amount" within the next ten days.

Again, the court finds that this constitutes a threat to sue.

e. "S2" or "One Last Chance" Letter (*Id.*, Ex.6)

CEA sent plaintiff Nancy Heth a letter dated May 29, 1997 as an apparent follow-up to the 490.5 lawsuit letter. In the letter CEA warned Ms. Heth that its client, "Jcpenney Ukiah" [sic] had requested that CEA delay filing a lawsuit, to give her a chance to make payment arrangements with CEA. The alternative, if she did not pay within the deadline, would be for CEA to advise "Jcpenney" to proceed with the lawsuit. In the letter CEA also advised Ms. Heth she could expect to be served by the "County Sheriff's Office." Plaintiffs observe that this letter implies an attorney-client relationship between CEA's general counsel and the original creditor on the debt and that together they are focusing on collecting this particular debt. This letter is computer-generated. Owen Mascott, CEA's general counsel, in the normal course of business did not communicate directly with creditors and, therefore, could not have consulted with "jcpenney" regarding Ms. Heth's debt.[17]

██ The text of each of the five letters, considered an light of the practice of CEA's attorneys merely to conduct a cursory review of debtor information, satisfies the second prong of the test, that is, there is no real possibility that CEA will sue. A false threat to take action may be established by showing that no assessment has been made as to whether the threat will be carried out. *Masuda v. Thomas Richards & Co.*, 759 F.Supp. 1456, 1459–61 (C.D.Cal. 1991) (suit filed without review of the file by anyone, much less an attorney), *or* by showing that the debt collector rarely follows through on a threat. *United States v. National Financial Services, Inc.*, 98 F.3d at 138; *Bentley, supra.*

---

**16.** Deposition of Robert Hyde, Vol. IV, at 20—22.

**17.** Deposition of Robert Hyde, Vol. IV, at 540:9—18.

Mr. Mascott and his successors only reviewed debtor information when they were seriously considering litigation. The vast majority of debtors were not sued, yet received letters which threatened suit. The absence of meaningful legal review, coupled with the threat to sue, violates the FDCPA, even *without any showing* of the odds that CEA would sue a particular debtor or how many debtors were actually sued, of the thousands who received threatening letters.

In the case at bar, CEA now files more lawsuits than it did when it retained Mascott,[18] and it still sues less than 0.05% of check writers, or approximately one in 2200. This pattern violates the FDCPA, since CEA, by its own admission, rarely follows through on its threats to sue.

7) CEA violates § 1692e(4), by sending dunning letters that threaten post-judgment remedies that CEA does not intend to seek. The facts here are much the same as above for lawsuits, in that CEA threatens to obtain a judgment and garnish wages, when it almost never does. These hollow threats violate the FDCPA, specifically § 1692e(4), which prohibits:

> the representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action. *Id.*

CEA also sends collection letters threatening to execute on judgments, which it does not intend to do in violation of 15 U.S.C. § 1692e(4) and (5). Again, empty threats are issued in an attempt to extract money.

The *court finds that the letters above* also violate the provisions of the FDCPA dealing with false threats of post-judgment remedies, since they threaten lawsuits,

which imply post-judgment action, or explicitly describe the post-judgment actions which CEA will take if the consumer does not pay, for example wage garnishments and bank levies.

8) CEA violates § 1692g(a), by sending initial dunning letters that do not contain the validation notices required by the statute. The FDCPA provides that "within five days after the initial communication with a consumer ... a debt collector shall send the consumer a written notice containing [a list of disclosures and notifications.]" *Newman v. Checkrite,* 912 F.Supp. at 1381, *citing* 15 U.S.C. § 1692g.

§ 1692g(a) of the FDCPA requires that any letter to a debtor from a debt collector contain a validation notice which provides: (1) the amount of the debt, (2) the name of the creditor to whom it is owed, (3) a statement that the debtor has thirty days within which to dispute the validity of all or a portion of the debt, after which the debt will be assumed by the debt collector to be valid, (4) the debtor's right to obtain written verification of the debt or a copy of the judgment, and (5) a statement that the debt collector will provide the name and address of the original creditor, upon written request by the debtor. *Id.*

Validation requirements are strictly construed under the "least sophisticated consumer" standard. *Baker,* 677 F.2d at 778. (Validation notice insufficient because debt collector did not explicitly inform debtor of right to contest a portion of the alleged debt.)

(a) The "ADX" Letter does not include an offer to obtain verification of the debt and provide it to the consumer if the consumer requests it within the thirty-day time period. This is required by 15 U.S.C. § 1692g(4). Therefore, as a matter of law, the "ADX" letter violates the FDCPA.

---

18. In a period when approximately 200,000 letters were sent out by CEA, only eight people were sued. (Plaintiffs' Appendix I, filed

October 13, 1999, Deposition of Robert Hyde, Vol. I, at 254:4—15)

■ (b) The second letter in the 490.5 series (Plaintiffs' Appendix III, Ex. 196) violates the validation provision of the FDCPA because it requires payment in less than thirty days after the initial notice. *Terran v. Kaplan*, 109 F.3d 1428 (9th Cir.1997) (A demand for payment within less than the thirty-day time frame necessarily requires the debtor to forego the statutory right to challenge the debt . . . within thirty days, or suffer the consequences. For this reason, requiring a payment that would eliminate the debt before the debtor can challenge the validity of that debt directly conflicts with the protections for debtors set forth in the FDCPA.) *Id.* at 1434. CEA's letter, as a matter of law, violates the FDCPA.

■ (c) CEA's initial letter in its 1719 [19] series violates § 1692g for the same treasons as the letter above. This letter advises the consumer just before the notice regarding the thirty-day validation period:

"This matter will be held in abeyance for five days awaiting your payment or reply. If any disputes, or if paid, advise immediately."

Any consumer reading this would reasonably assume that there would be consequences in delaying more than five days before contacting CEA. This conflicts with the statutory thirty day period for disputing and requesting validation of the debt, and violates 15 U.S.C. § 1692g.

9) CEA violates § 1692e(11), by not including in each of its dunning letters, as required, that it is a debt collector attempting to collect a debt, or that any information obtained will be used for that purpose.[20]

(a) The "ADX" Letter states:
This is an attempt to demand penalties pursuant to Penal Code 490.5. Any information will be used for that purpose. Unless you dispute the validity of the penalties demanded or any portion thereof within 30 days, after receipt of this letter, we assume this debt is valid.

This does not satisfy the requirement that CEA identify both itself as a debt collector and the letter as an attempt to collect a debt.

■ (b) The "ADR" letter, CEA's second letter in its 490.5 series, also fails to comply with the provision requiring identification as a debt collector attempting to collect a debt. The text advises ambiguously, "This may have been sent to you by a collection agency " Applying the least sophisticated consumer standard, this is deceptive, and does not comply with the statute.

(d) The "SC" letter, the third in the 490.5 series, also advises, "This may have been sent to you by a collection agency." If also fails to comply with § 1692e.

■ 10) CEA violates § 1692e(2) and (10), by sending dunning letters that omit the face amount of the check which CEA seeks to collect, and by substituting a higher figure as the "claim amount" or "assignment amount." These letters violate the FDCPA prohibition against false, deceptive or misleading information being used to collect a debt. *West v. Costen*, 558 F.Supp. 564, 583 (W.D.Va.1983).

For example, the "ADX" letter sent to plaintiff Nancy Heth contained the date

---

**19.** See Plaintiffs' Appendix II, Exhibits in Support of Motion for Summary Judgment, Ex. 180

**20.** 15 U.S.C. § 1692e(11) prohibits conduct including:
The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

and number of her check and the following:

Offer of Settlement:
Assignment amount: $210.38
Statutory fee: $ 89.00
Settlement total: $299.38

CEA sent the same "ADX" form letter to plaintiff Lorraine Castaneda. It also included the date and number of her check and the following:

Offer of Settlement:
Claim amount: $ 64.25
Statutory fee: $ 89.00
Settlement Total: $153.25

The actual amount of each check, $186.65 as to plaintiff Heth and $34.16 as to plaintiff Castaneda, does not appear anywhere in any collection letter CEA sent to either of them. Applying the least sophisticated consumer standard leads to the conclusion that she would probably assume that the assignment amount or the claim amount was the amount of the check. This would be especially true when the check had been written some time before the letter was received and the check writer had no independent recollection of the check or the amount. Consequently, the excess charges could be added without any dispute from the consumer. This court finds that this failure to disclose the additional charges is deceptive and misleading and, therefore, violates 15 U.S.C. § 1692e(2).

11) Each of CEA's debt collection practices described above also violates Cal. Business and Professions Code § 17200, et seq., ("CUBPA"), which prohibits unlawful, unfair or fraudulent business practices.

One of the purposes of the FDCPA is to "insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged..." 15 U.S.C. § 1692(e). By violating the FDCPA, Defendants engage in illegal practices which competitively disadvantage their peers who obey the law and refrain from those practices. This court

finds that the deceptive practices described above, which violate the FDCPA, also violate the CUBPA.

*Damages or Restitution*

■ 1. For violations of the FDCPA, CEA is liable for actual damages consisting of foreseeable out-of-pocket expenses incurred by check writers in responding to CEA's demands, including the amount which CEA collected above the face amount of each check, plus pre-judgment interest, for all payments demanded or made on or after January 1, 1994, 15 U.S.C. § 1692k(a)(1) provides:

Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—

(1) any actual damage sustained by such person as a result of such failure;

15 U.S.C. § 1692(a)(2) provides for additional statutory damages. Plaintiffs do not yet seek a ruling on the amount of statutory damages.

■ Plaintiffs also claim entitlement to restitution, in the form of disgorgement by CEA of its illegally-obtained profits. This is authorized by the CUBPA. Indeed, it also authorizes an order of restitution of any money which a trial court finds *may have been acquired* by means of any illegal practice. (Emphasis added). *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1267, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992). A court may order restitution without individualized proof of deception, reliance and injury, if necessary to prevent the use of an unfair practice. *Id.* Plaintiffs seek an order refunding to class members all money collected by CEA beyond what it was lawfully entitled to collect.[21]

■ In the case at bar, Plaintiffs do not seek a determination of the actual

---

**21.** Plaintiffs do not seek a double recovery for those who may be entitled to both restitution

under state law and damages under federal law.

amount of damages, only a finding of law that such damages are due under the applicable statutes. Restitution of any money which the court finds may have been acquired as a result of the unfair practice is justified as a deterrent to future violations. *Bank of the West v. Superior Court,* 2 Cal.4th 1254, 1267, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992); *Fletcher v. Security Pacific National Bank,* 23 Cal.3d 442, 451, 153 Cal.Rptr. 28, 591 P.2d 51 (1979). Prejudgement interest is also due on money paid as restitution. Cal. Civ.Code § 3287(a) provides, in pertinent part:

> Every person who is entitled to recover damages certain, or capable of being made certain by calculation and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt...

■ Damages is defined broadly to include any compensatory monetary recovery, as provided in Cal. Civil Code § 3281, which provides:

> Every person who suffers detriment from the unlawful act or omission of another, may recover from the person in fault a compensation therefor in money, which is called damages.

Cal. Civil Code § 3287 has been consistently applied to require the award of pre-judgment interest where the judgment is for money owed or to be refunded pursuant to a statutory obligation. *Tripp v. Swoap,* 17 Cal.3d 671, 681, 131 Cal.Rptr. 789, 552 P.2d 749 (1976).

■ 2. For violation of the California Unfair Business Practices Act, CEA is liable to class members who paid a service charge, plus pre-judgment interest, for all payments demanded or made on or after January 1, 1994. The rationale is that plaintiffs were deprived of the use of any money they paid to CEA and should be made whole by being compensated for interest they would have been paid, in order to prevent unjust enrichment of CEA by its having the use of Plaintiff's money. *Id.*

### Declaratory Relief

■ Declaratory relief is appropriate when: (1) the judgment will serve a useful purpose in clarifying and settling the legal relations in issue; and (2) it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceeding. *Gammon v. GC Services Ltd. Partnership,* 162 F.R.D. 313, 320 (N.D.Ill.1995). *See also, Guerra v. Sutton,* 783 F.2d 1371, 1376 (9th Cir.1986).

■ Class members in this case are entitled to a judgment declaring that Defendant's practice of demanding a service charge and making other misrepresentations violate the FDCPA and CUBPA, as follows:

1. CEA's collection charges on dishonored checks are unlawful under the FDCPA and CUBPA to the extent that those charges exceed those expressly allowed under Cal. Civil Code § 1719;

2. CEA has acted unlawfully in seeking a service charge under Cal. Civ.Code § 1719 on checks written prior to January 1, 1997;

3. CEA has acted unlawfully in seeking treble damages under California Civil Code § 1919(a) because it has not mailed letters which comply with the prerequisites of that statute;

4. CEA has acted unlawfully in seeking damages pursuant to California Penal Code § 490.5;

5. CEA has falsely represented that its standard computer-generated collection letters are communications from an attorney;

6. CEA has acted unlawfully in threatening to sue check writers who do not pay its demands because at the time it makes these threats CEA has not decided to sue the check writer;

7. CEA has acted unlawfully by sending collection demands which do not in-

clude the notice required by 15 U.S.C. § 1692g, or which contain language which contradicts or overshadows the notice;

8. CEA has acted unlawfully by sending collection demands which do not include the disclosure statement required by 15 U.S.C. § 1692e(11).

*Injunctive Relief*

Plaintiff requests that, pursuant to California Business and Professions Code §§ 17200 et seq., CEA and its subsidiaries, principals, officers, agents, employees, successors and assigns be hereby and immediately permanently enjoined and restrained from:

1. Sending collection letters which do not include the face amount of the check in any identification of the debt or itemization of damages;

2. In connection with collection demands made pursuant to California Civil Code § 1719 demanding any amounts in excess of the actual postage expense as the "cost of mailing" pursuant to § 1719(a);

3. Making collection demands pursuant to California Penal Code § 490.5;

4. Making demands for treble damages pursuant to California Civil Code § 1719, unless defendant has (1) sent a letter which meets all the requirements of § 1719 and (2) maintained a record that shows the actual letter mailed, the actual date of mailing, and that the letter was sent certified mail;

5. Representing orally or in writing, directly or by implication, that a check writer's failure to pay the amount being demanded will cause the check writer to be subject to legal action, including suit, or cause the consumer's debt to be reduced to judgment when at the time the representations are made defendant has not both: (1) obtained authorization from the creditor to take that particular legal action and (2) reached a decision to take such legal action at the time the representation is made;

6. Representing orally or in writing, directly or by implication that a communi-

cation is from an attorney unless an attorney has had meaningful professional input in the decision to send a particular letter to a particular check writer, including, but not limited to, having reviewed the file of the check writer to whom the letter is being sent, verified that the information in the file is accurate, and determined based on the file information to send the particular letter;

7. Making any collection demands which CEA knows or should know are unlawful, false, deceptive or misleading or which otherwise violate the Fair Debt Collection Practices Act, including, but not limited to, falsely representing: (1) that a communication is from an attorney; (2) that failure to pay the money being demanded will result in a lawsuit being filed, a judgment being obtained, or a judgment being executed; or (3) that the check writer has committed a crime;

8. Sending collection demands which do not include the notice required by 15 U.S.C. § 1692g, or which contain language which contradicts or overshadows the notice;

9. Sending collection demands which do not include the disclosure statement required by 15 U.S.C. § 1692e(11).

### DEFENDANTS' OPPOSITION

Defendants oppose Plaintiffs' motion for the most part on the basis of disputes regarding law, rather than fact. Defendants allege some procedural lapses as well. For example, Defendants characterize the motion as directed only at CEA, not its president, Eric Browning, or its attorney, Owen Mascott. Defendants argue the motion is premature, as well, on grounds that "discovery is not well-developed." Defendants cite Rule 56(f), Fed. R.Civ.P., in support of this proposition. However of the evidence against Defendants consists of their own testimony and documents. Further discovery from Plaintiffs would probably not make a difference. Plaintiffs' intent is not at issue, nor are

their actual damages. For the above reasons, this court rejects Defendants' procedural objections as unfounded.

In their substantive opposition to Plaintiff's motion:

1) Defendants contend Plaintiffs have failed to show that the alleged violations of the FDCPA, for example of §§ 1692g and 1692e(8), were committed knowingly and intentionally. This is a legally invalid defense. "The FDCPA is a strict liability statute and thus does not require a showing of intentional conduct on the part of the debt collector." *Pittman v. J.J. Mac Intyre Co.*, 969 F.Supp. 609, 613 (D.Nev.1997) *citing Kuhn v. Account Control Technology, Inc.*, 865 F.Supp. 1443, 1450 (D.Nev.1994) *see also Cavallaro v. Law Office of Shapiro & Kreisman*, 933 F.Supp. 1148 (E.D.N.Y.1996); *Cacace v. Lucas*, 775 F.Supp. 502, 505 (D.Conn. 1990), 15 U.S.C.A. § 1692k. Intent is only an issue in setting the amount of damages.[22]

A debt collector's intent is significant in establishing liability only with respect to whether it intended to commit specific acts, for instance, to threaten to sue with no intention of doing so or to telephone a debtor with intent to harass. *Fox v. Citicorp Credit Services, Inc.*, 15 F.3d 1507, 1517 (9th Cir.1994), 15 U.S.C. § 1692e. (The court found facts material to the defendants' intent to commit these specific acts to be material and not subject to summary judgment.) This does not apply to the debt collector's intent to violate the statute. Intent to violate the statute is not necessary to prove a violation of

the FDCPA. As previously held by this court:

> This is distinguishable from defendants' knowing that a specific act violated the statute and doing it anyway, which would show intent to violate the statute.

*Irwin v. Mascott*, 94 F.Supp.2d 1052, 1057 (N.D.Cal.2000).[23]

In the case at bar, Defendants' own testimony verifies that both CEA and Mr. Mascott were well aware of the practices and procedures followed in issuing the debt collection letters. Mascott testified that as CEA general counsel, he had certain duties. These included scripting letters, telephone calls targeting "bad check writers", and developing strategies for the creditor-clients.[24] He testified that he worked with CEA management to change and format letters.[25] Mascott delegated some tasks associated with the letters to his executive secretary.[26] His first contact with an account came only after the creditor-clients had provided CEA with computerized lists of checks and sometimes copies of the checks themselves.[27] Other CEA personnel compiled the spreadsheets which he reviewed, two days before the letters were scheduled to be sent from the "mail site." Collection agency employees worked with the data and determined which letter would be issued.[28] Defendants' managers and attorney collectively designed the letters, modified them periodically, and decided which ones went out to which debtors.[29] Defendants at all times knew which letters were going out to whom and their content. Although this procedure is inadequate to constitute legal

---

**22.** The issue of intent may be a factor in determining actual or statutory damages. 15 U.S.C. § 1692k(b)(1) and (2).

**23.** Order Denying Motion to Add Third-Party Defendants, filed February 11, 2000.

**24.** Mascott Deposition taken March 17, 1999, in *Scott et al. v. Mascott et al.* C–98–172Z, 1999 WL 33117204 (W.Dist.Wash.) at 8:12–19 (Ex. 6 to Appendix of Exhibits in Support of Defendants' Opposition.)

**25.** *Id.* at 8:16–17

**26.** *Id.* at 14:9–18.

**27.** Deposition of Robert Hyde, Vol. III, at 14—18.

**28.** *Id.* at 18:16—20:1

**29.** Ex. 7 to Defendants' Ex. 7, Hyde Deposition in the case at bar, September 8, 1999, at 228: 18—25.

review, it is enough to establish knowledge and intent to perform the actions which violated the FDCPA.

Defendants also contend that Plaintiffs have failed to allege violation of § 1719 of the California Civil Code. Plaintiffs respond that their complaint clearly alleges that "it is the standard policy and practice of defendants to add unlawful charges to checks..." (13:18–20). Plaintiffs specifically refer to § 1719 at p. 13:1–15 of the complaint. This part of Defendants' opposition fails.

2) Defendants repeat their contention that Plaintiffs must show that any violation of the FDCPA by CEA was knowing and intentional. As discussed above, no such showing is required. This part of Defendants' opposition also fails.

 Defendants also contend that Plaintiffs have failed to present any affirmative evidence of their prima facie claim, "including intent, causation, or entitlement to actual or statutory damages." As discussed above, to prove liability Plaintiffs need not show intent by Defendants. Causation is not an issue, since entitlement to actual damages is not an element of an FDCPA violation. The right to statutory damages is established by any FDCPA violation. Plaintiffs have offered affirmative evidence of Defendants' violations of the FDCPA, namely the company's practices with respect to attorney involvement and the text of its collection letters. This part of Defendants' opposition fails.

3) Defendants assert the "bona fide error" defense, or at least their "good faith" version, which is that "CEA believed it was complying with state and federal law in its collection practices and that it was collecting amounts which it was entitled to collect through methods that it was legally entitled to employ."

 Unfortunately for Defendants, the bona fide error defense applies almost exclusively to clerical errors which somehow manage to slip through procedures designed to catch them, not to an advice-of-counsel defense, which is what Defendants are attempting to assert in the case at bar. Such a defense is not available to an alleged violation of FDCPA, except as part of an analysis of whether the violation was knowing or intentional, which is only a factor in calculating damages, not in establishing liability.

Defendants, at the hearing on this motion, cited the *Heintz* case in support of their contention that the bona fide error defense includes mistakes of law, which opens the door to an advice-of-counsel defense to alleged violations of the FDCPA. *Heintz v. Jenkins,* 514 U.S. 291, 295, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995). The Court in *Heintz* held primarily that in actions alleging violation of the FDCPA by an attorney, no litigation exemption applies and, therefore, that the FDCPA governs lawyers engaged in litigation. *Id.* at 294, 115 S.Ct. 1489. (Attorney collecting debt for bank allegedly listed an incorrect amount owed under the loan agreement in the course of settlement negotiations. Plaintiff sued the attorney under the FDCPA. The Court held that the attorney was not exempt from suit for violation of the FDCPA.)

The attorney in the *Heintz* case had claimed immunity from suit under the litigation exemption. The Court rejected this defense and the rationale behind it, which was that many of the FDCPA's requirements if applied directly to litigating activities would create harmfully anomalous results, which Congress could not have intended. Any attorney who lost a lawsuit against a debtor could later be found to have violated the FDCPA by bringing an "action that cannot legally be taken," a violation of § 1692e(5). The Court found that § 1692k(c), the bona fide error provision, contradicts this interpretation. However, this was *dicta* and not part of the holding in the case. It was also merely part of the Court's comparing and contrasting different interpretations of the Act. The Court concluded that "we do not see how the fact that a lawsuit turns

out ultimately to be unsuccessful could, by itself, make the bringing of it 'an action that cannot legally be taken.'" *Id.* at 296, 115 S.Ct. 1489. This narrow finding does not support Defendants' expansive interpretation to establish a defense of mistake of law or good faith reliance on the advice of counsel.

Numerous district courts have unmistakably rejected the advice-of-counsel defense asserted by Defendants. The Ninth Circuit has emphatically concurred in the *Baker* case. The court reasoned that if the actions undertaken were intentional, it was no defense that the debt collector relied on a mistake of law, even in good faith.

> "Reliance on advice of counsel or a mistake about the law is insufficient by itself to raise the bona fide error defense. Section 1692k(c) does not immunize mistakes of law, even if properly proven."
>
> Appellant only presented evidence that, at best, might show it had been mistaken about the law. This is insufficient by itself to support the bona fide error defense pursuant to 15 U.S.C. section 1692k(c).
>
> Section 1692k(c) of the Act is nearly identical to the bona fide error defense section under the Truth in Lending Act (TILA), 15 U.S.C. section 1640(c). It has been uniformly held that unintentional "clerical errors ... are the only violations this section (of the TILA) was designed to excuse." (reliance on advice of counsel insufficient to support defense of bona fide error);( § 1640(c) called "the clerical error defense"); In a case in which the defendant similarly contended that an error of law was not intentional within the meaning of § 1640(c), the court stated:
>
> "It is undisputed that defendant carefully, deliberately–intentionally– omitted the disclosure in question. That defendant ... mistook the law does not make its action any less intentional."
>
> Appellant only presented evidence that, at best, might show it had been mistaken about the law. This is insufficient by itself to support the bona fide error defense pursuant to 15 U.S.C. section 1692k(c). Therefore, we affirm the district court's conclusion that the defense was unavailing.

*Baker,* 677 F.2d at 779–780 (internal citations omitted).

As a matter of law, this part of Defendants' opposition fails.

4) Defendants also contend that Plaintiffs are obliged to show proximate cause and actual damages greater than the $25 service charge authorized by present California state law, although this charge was not authorized at the time of many of the alleged violations.

Once again Defendants misread the law. The Ninth Circuit has plainly ruled that an award of statutory damages is not contingent on a finding of actual damages and that public policy precludes making an award dependent on a showing of actual damages. It follows that the elimination of a requirement to prove actual damages means there is no need to prove proximate cause for such damages. The FDCPA is a strict liability statute. Violation equals liability.

> "Policy also supports the award of statutory damages without proof of actual damages. The only actual damages that a plaintiff would be likely to incur would be for emotional distress caused by abusive debt collection practices and, unless the violations are extreme and outrageous, traditional stringent evidentiary hurdles would be difficult to overcome."

*Baker,* 677 F.2d at 780.

This part of Defendants' opposition also fails.

5) Defendants assert that intent is a necessary element of a FDCPA violation. This fails, as discussed above.

6) Defendants assert an affirmative defense of "bona fide error." Defendants in

fact offer no support for such a defense, which involves clerical errors which slip through procedures meant to prevent them, as distinguished from the advice-of-counsel defense, on which Defendants really rely. *See Baker, supra,* and accompanying analysis. This part of Defendants' opposition fails.

7) CEA claims it may not be held liable for letters sent and signed by its attorney, Owen Mascott, because Plaintiffs have not moved for summary judgment against Mascott "directly."

 A corporation is liable for the actions of its agents. As a matter of law, CEA's attorney Owen Mascott had apparent and actual agency authority to send collection letters on behalf of CEA. Chief Judge Emeritus Karlton discussed this issue in the *Newman v. Checkrite* case:

> Imposition of liability under the doctrine of apparent authority arises from a manifestation by a principal to a third party that another is his agent. See Restatement (Second) Agency § 8 (1958). Federal common law will impose vicarious liability on a principal for conduct within the agent's apparent authority, when that conduct is tortious under a federal statute. *See Hydrolevel Corp.,* 456 U.S. at 565–66, 102 S.Ct. at 1942–43.

> The evidence is such that a reasonable trier of fact could conclude that CheckRite allowed the outside attorneys to represent that they were acting as agents of CheckRite, and thus, may be liable for any unlawful tactics used in an effort to recover the amounts due. Accordingly, since vicarious liability is consistent with the FDCPA and may be applicable in this case, summary judgment for defendants must be denied.

> Finally, as noted above, given the close relationship between these defendants, and CheckRite's likely understanding of the terms of the FDCPA, its acceptance of funds collected by its outside attorneys, and the totality of the circumstances, the court also must conclude

that defendants are not entitled to summary judgment relative to ratification. *Newman v. Checkrite,* 912 F.Supp. 1354, at 1371.

However, Plaintiffs argue that this court need not even reach the issue of vicarious or agency liability, since CEA is directly responsible for sending the letters which go out over Mascott's signature and on his letterhead. In fact, CEA's practice of using an attorney as a 'front,' even though it has no intention of taking legal action, is part and parcel of the violation.

Plaintiff cites the following facts as evidence of CEA's direct involvement:

1) CEA receives check data. which it enters into the CEA computer system; 2) the collection letters are created from the computer data; 3) the computer letter file is sent on an almost daily basis to CEA's printing and mailing service. Eric Browning, CEA's President and CEO, admits that the letters are CEA's and that CEA sends the letters ( Browning Declaration dated May 12, 1999, 3:1, 4:15, 5:3–4, 5:15–18. Robert Hyde, the Operations Manager, also states that CEA sends the collection letters (Hyde Declaration, dated November 12, 1999, at 2:8–14, 2:24–26, 4:26—5:3).

The court in *Newman v. Checkrite* found the corporate debt collector liable for the actions of its attorney, despite a contract in which the attorney agreed not to violate the FDCPA:

> As noted above, CheckRite argues that its agreements with the attorneys shield it from liability since they provide that "[a]ttorney warrants that they will not perform any acts not permitted by law." (Id.) The argument is without merit. Apparent authority results from the act of representing responsibility to others, and accordingly, cannot be avoided by private agreements between the principal and agent. CheckRite, by allowing the outside attorneys to identify themselves to third parties as representatives of CheckRite, has made itself responsi-

ble for the acts of the attorneys performed in the course of that representation. The clause of the contract relied upon by CheckRite may well provide it with a right to indemnity from the attorneys if it is breached. It cannot, however, insulate CheckRite from liability to third parties who are not contractually bound by its terms, and indeed, have no knowledge of the existence of such an agreement.

*Newman v. Checkrite,* 912 F.Supp. at 1371.

■ The court in the *Newman v. Checkrite* case found the corporate debt collector responsible for the conduct of outside counsel. In the case at bar, Mr. Mascott acted as CEA general counsel, an even closer relationship than that of the law firm in *Newman v. Checkrite.* CEA may not hide behind its contract with its counsel. This part of Defendants' opposition fails.

7a) Defendants claim there is no vicarious liability available under California's Unfair Business Practices Act. This is a non-issue, since Mascott acted as CEA's attorney and agent, and therefore the liability of CEA for his actions has a basis other than vicarious liability. This part of Defendants' opposition fails.

8) CEA rejects Plaintiffs' contention that it made threats of legal action which it either would not or could not undertake if the debtors failed to pay. Plaintiffs offer statistics to show the infinitesimal number of legal actions actually brought by CEA. CEA does not offer any alternative figures. Plaintiffs have met their burden of proving this element of their claim by showing that CEA's attorneys conducted no meaningful review of debtor files and that letters which threatened suit were sent without any attorney having made a decision to sue. Defendants offer only their lack of intent, which is not a defense, and their good faith belief that they were entitled to file lawsuits, even though they admit they filed "only a small number." (Defendants' Opposition at p. 6).

In a period during which approximately 200,000 letters were sent out by CEA, only eight people were sued. (Plaintiffs' Appendix I, filed October 13, 1999, Deposition of Robert Hyde, Vol. I, at 254:4—15) Defendants object to Plaintiffs' numbers as hearsay. However, these statistics were generated by Plaintiffs' counsel from data provided by Defendants. As stated above, this court need not rely on Plaintiffs' statistics to find that Defendants made threats to sue when they had no real intent to sue. There is sufficient basis for this conclusion in Defendants' own testimony regarding the number of lawsuits in proportion to the number of letters and the lack of meaningful attorney review of debtors' files.

9) CEA claims that Plaintiffs must prove an intentional violation of § 1692g, resulting in actual injury, as well as intent for each letter CEA sent out. Again, intent is not required to prove a violation of the FDCPA. Defendants argue that the validation notice is only required to be sent out with the first collection notice and that Plaintiffs have failed to demonstrate that it was not contained in notices sent out by CEA or in notices sent before CEA began collection. The Declarations of the named Plaintiffs in the case at bar, Kathleen Irwin, Nancy Heth and Lorraine Castaneda, all state that they received initial letters from CEA which did not contain the validation notice. (Plaintiffs' Declarations in Support of Motion for Summary Judgment, filed October 13, 1999). In these instances, at least, there is sworn testimony that Defendants violated the validation notice requirement of the FDCPA.

10) CEA claims Plaintiffs' California Unfair Business Practices Act (CUBPA) claims are contingent on the FDCPA claims, and therefore summary judgment must be denied. In fact, since this court sustains the claims for violation of the FDCPA, the CUBPA claims must be affirmed.

■ 11) CEA invokes privileges pursuant to Cal. Civil Code § 47(c). This

statute provides, in pertinent part, that a privileged communication is one made "in a communication, without malice, to a person interested therein, (1) by one who is also interested..." The only reference in that subdivision to a particular kind of communication is one between a prospective employer of a job applicant and the applicant's current or former employers. The characterization of this as a "creditor's privilege" appears to originate with Defendants. Defendants also propose that as participants in administrative or judicial proceedings their attorneys are immune from civil liability. If this were so, the holding by the Supreme Court in the *Heintz* case that attorneys are subject to the FDCPA and that there is no litigation exemption would be a nullity. This part of Defendants' opposition fails.

## SUMMARY AND CONCLUSION

Congress enacted the FDCPA primarily to protect consumers from the unscrupulous debt collector, who employs deceptive schemes to intimidate a debtor into paying, not only the debt, but also the additional charges which supply the collector's profits. These schemes include using an attorney as a front to imply that a debt collector has taken or will soon take legal action. Secondarily, the statute protects the ethical debt collector from unfair competition. In California, violation of the FDCPA triggers the CUBPA, which punishes unfair and anticompetitive business practices.

The FDCPA is a strict liability statute. Plaintiffs need not prove either that Defendants knew that their debt collection practices violated the law or that they intended to violate the law. Plaintiffs need only prove that (1) the Defendants knew what practices they were engaged in, and (2) the practices violated the FDCPA. Plaintiffs are not required to prove that consumers suffered any actual damages, in order to prove Defendants' liability for FDCPA violations.

Neither the bona fide error defense, nor any privilege under Cal. Civil Code § 47(c) are available to Defendants. Since proof of intent is not necessary to establish an FDCPA violation, Defendants may not shoehorn an advice-of-counsel defense into the statute. Mistake of law is explicitly excluded from the bona fide error defense. In addition, attorneys have been found not to be exempt from liability for FDCPA violations under a litigation exemption. Therefore, there can be no claim of privilege under § 47(c) of the California Civil Code.

Relying on admissible evidence, in many instances Defendants' own testimony, this court finds that, as a matter of law, there being no material facts in dispute, Defendants' collection letters violated the FDCPA in that, among them they (1) misrepresented that they were communications from an attorney, (2) falsely threatened to sue, (3) lacked the required validation notice, and (4) attempted to induce consumers to pay before the thirty-day time period was up. These are all violations of explicit provisions of the statute.

Any violation of the FDCPA entitles each plaintiff in the class to an award of statutory damages, one award per plaintiff. In a class action like this one, the total award would be the lesser of $500,000 or one per cent of the defendants' net worth. In addition, reasonable attorney fees are available.

In California, FDCPA violations also trigger the CUBPA, which adds injunctive relief to Plaintiffs' remedies, and an extension of the statute of limitations for a subset of the class. As this court decided in the order certifying the class: "This court has jurisdiction over a sub-class B [the CUBPA class], for the full four year period provided by California law.[30]" *Ir-*

---

30. *Ballard v. Equifax Check Services, Inc.,* 186 F.R.D. 589 (E.D.Cal. 1999), Exhibit A to plaintiff's Supplemental Brief.

*win v. Mascott*, 96 F.Supp.2d 968, 974 (N.D.Cal.1999).[31]

Defendants argue that the FDCPA preempts injunctive relief under state law. Defendants first raised this argument in their opposition to certification of the class in this case. This court found, and maintains, that the FDCPA does not prevent Plaintiffs from seeking the injunctive relief offered by the CUBPA. Defendants in their opposition to class certification briefly referred to 15 U.S.C. § 1692n, but omitted any reference to its last sentence. That provision of the FDCPA provides, in its entirety:

> This title does not annul, alter, or affect, or exempt any person subject to the provisions of this title from complying with the laws of any State with respect to debt collection practices, except to the extent that those laws are inconsistent with any provision of this title, and then only to the extent of the inconsistency. *For purposes of this section, a State law is not inconsistent with this title if the protection such law affords any consumer is greater than the protection provided by this title.*

15 U.S.C. § 1692n, (emphasis added).

The injunctive relief offered by CUBPA protects the consumer by stopping the abusive debt collector in its tracks. Prohibiting illegal activity is probably one of the most effective means of protecting consumers. This is exactly the type of greater protection afforded to consumers which is not preempted by the FDCPA. For this reason, Plaintiffs are entitled to all the remedies of the FDCPA, as well as the remedies offered by the CUBPA.

## PRELIMINARY INJUNCTION

The California Unfair Business Practices Act ("CUBPA") provides for injunctive relief as a remedy for violations of laws prohibiting unfair and anticompetitive business practices. Defendants' violations of the Fair Debt Collection Practices Act ("FDCPA") fall into this category, since one of the purposes of the FDCPA is to protect the debt collectors who follow the law from those who do not.

The court has found the following practices to violate the FDCPA, as a matter of law. Accordingly, for good cause appearing,

IT IS HEREBY ORDERED that CEA and its subsidiaries, principals, officers, agents, employees, successors and assigns are hereby and immediately permanently enjoined and restrained from:

1. Sending collection letters which do not include the face amount of the check in any identification of the debt or itemization of damages;

2. In connection with collection demands made pursuant to California Civil Code § 1719 demanding any amounts in excess of the actual postage expense as the "cost of mailing" pursuant to § 1719(a);

3. Making collection demands pursuant to California Penal Code § 490.5;

4. Making demands for treble damages pursuant to California Civil Code § 1719 unless defendant has (1) sent a letter which meets all the requirements of § 1719; and (2) maintained a record that shows the actual letter mailed, the actual date of mailing, and that the letter was sent certified mail;

5. Representing orally or in writing, directly or by implication, that a check writer's failure to pay the amount demanded will cause the check writer to be subject to legal action, including suit, or cause the consumer's debt to be reduced to judgment when at the time the representations are made defendant has not both: (1) obtained authorization from the creditor to take that particular legal action; and (2) reached a decision to take such legal action at the time the representation is made;

---

**31.** First published at 186 F.R.D. 567, 570 (N.D.Cal.1999).

6. Representing orally or in writing, directly or by implication that a communication is from an attorney unless an attorney has had meaningful professional input in to the decision to send a particular letter to a particular check writer, including, but not limited to, having reviewed the file of the check writer to whom the letter is being sent, verified that the information in the file is accurate, and determined based on the file information to send the particular letter;

7. Making any collection demands which CEA knows or should know are unlawful, false, deceptive or misleading or which otherwise violate the Fair Debt Collection Practices Act, including, but not limited to, falsely representing: (1) that a communication is from an attorney; (2) that failure to pay the money being demanded will result in a lawsuit being filed, a judgment being obtained, or a judgment being executed; or (3) that the check writer has committed a crime;

8. Sending collection demands which do not include the notice required by 15 U.S.C. § 1692g, or which contain language which contradicts or overshadows the notice;

9. Sending collection demands which do not include the disclosure statement required by 15 U.S.C. § 1692e(11).

### CONCLUSION AND ORDER

Plaintiffs have met their burden of establishing that (1) there is no genuine issue of material fact and that they have proven all the elements of their claims under the FDCPA and the CUBPA, (2) they are entitled to actual and statutory damages, restitution, interest and injunctive relief, as a matter of law, and (3) Defendants have no valid defenses.

For all the above reasons, and good cause appearing,

IT IS HEREBY ORDERED that Plaintiffs' motion for summary judgment as to Defendants' liability for violation of FDCPA and CUBPA and Plaintiffs' enti-

tlement to remedies, including damages and injunctive relief, is granted. Pending a determination of the amount of damages, Defendants shall immediately cease all enjoined activities, as described above. Parties shall appear for a further case management conference on September 20, 2000 at 10:30 a.m.